ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* MORGAN.

## Opinion delivered December 7, 1914.

1. RAILROADS—INJURY TO PERSON ON TRACK—PRESUMPTION.—Where an employee of a railroad company is struck by a train and injured while riding a hand car, a *prima facie* case of negligence is made against the company.

2. RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.—Proof of contributory negligence on the part of an employee or of a traveler who is struck by a moving train overcomes the presumption of negligence and places the burden on the injured party to show that there was negligence on the part of the servants of the company after discovering the peril of the injured person.

3. RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.—Where any person is injured by being struck by a moving train, the burden is on the railroad company to prove contributory negligence, and until it does so, the *prima facie* case arising from proof of the injury stands.

4. RAILROADS—INJURY TO EMPLOYEE ON TRACK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—Plaintiff, an employee of defendant railroad company was riding a speeder on the track. Observing the approach of a train he got off and was injured while attempting to remove the speeder from the track. *Held*, whether plaintiff was guilty of contributory negligence, was a question for the jury.

5. RAILROADS—INJURY TO EMPLOYEE ON TRACK—DUTY OF TRAIN OPERATIVES.—Plaintiff, an employee of defendant railroad company was injured while attempting to remove a speeder, which he had been riding, from the track after his discovery of the approach of a train. *Held*, it was prejudicial to have refused defendant's prayer for an instruction as follows: "The engineer and fireman had a right after seeing that plaintiff was upon the track, to rely upon the presumption that plaintiff would get off the track and clear the danger from the train; and if it afterwards became apparent that plaintiff was not going to get off the track, and from the time it became so apparent the engineer and fireman used reasonable care and diligence to stop the train or to avoid the injury, and could not reasonable do so by reason of the nearness of the engine to plaintiff, then your verdict should be for the defendant."

6. RAILROADS—PERSON ON TRACK—DUTY OF CARE.—When trainmen see a person on the track, they have a right to assume that he will get off in time to avoid a collision, unless it appears that such person is oblivious to his danger or is unable to extricate himself from the place of peril.

7. RELEASE—PERSONAL INJURIES—FRAUDULENT PROCUREMENT.—Plaintiff, an employee of defendant railroad company, sustained personal injuries being struck by a moving train. He executed a release, relieving the defendant from liability, for a money consideration and a promise by the claim agent that he would be given permanent employment. He was later discharged without cause. *Held*, under these facts it was error to submit the issue of fraud in the procurement of the release.

8. RELEASE—FALSE REPRESENTATIONS—VALIDITY.—False representations in a release relied upon by plaintiff, an illiterate person, relieving a railroad company from liability arising out of an injury to plaintiff, an employee, that the release contained an agreement to give plaintiff permanent employment, will render the contract of release void.

9. RELEASE—PERMANENT INJURY—STATEMENTS OF PHYSICIAN.—Erroneous statements of a physician who treated plaintiff at defendant's hospital that his injuries were not permanent, will, if relied upon by the plaintiff, render void a contract of release, signed by plaintiff, relieving defendant from liability.

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; reversed.

*E. B. Kinsworthy, Campbell & Suits* and *T. D. Crawford,* for appellant.

1. It was not incumbent upon appellant to show that it did not discover appellee's presence upon its track in time to avoid injuring him. The injury having occurred prior to the amendment to the lookout statute, appellant established a sufficient defense to bar recovery when it showed that he was guilty of contributory negligence, unless other facts were shown sufficient to overcome the effect of the contributory negligence. The burden was, therefore, then upon appellee to show that appellant discovered him upon its track in time to avoid injuring him. 69 Ark. 382; 65 Ark. 233; 62 Ark. 235. See, also, opinion on former appeal, 107 Ark. 218, from which it appears that the issue in the case was as to whether or not appellant's employees discovered appellee's perilous position in time to avoid injuring him.

2. Instruction 5 is erroneous. (1) There is no testimony to bring the case within the rule announced in the Hambright case, 87 Ark. 614. Nothing to show that the

physician was guilty of any duplicity in advising plaintiff that he would be all right in a few days, if he gave any such advice. The *Hambright* case is authority only for the proposition that if the doctor *knowingly makes a false statement,* this is fraud, and does not hold that an honest mistake on his part would amount to fraud, or would avoid a release. (2) It errs in its charge with reference to the promise of a permanent position as section foreman, the same being inconsistent with the terms of the written release, and, moreover, there being no proof that at the time the alleged promise was made there was a present intention not to do so. 156 S. W. 967; 132 Ill. 327; 108 Wis. 457; 128 Ill. 9; 15 Ind. 11; 42 Ill. App. 548; 6 Cowen, 346; 14 Am. & Eng. Enc. of L., 48; 21 Ark. 342; 19 Wall. 146; 127 Wis. 451; 145 Mass. 86; 4 Am. St. 282; 10 L. R. A. (N. S.) 640.

3. Clearly, under the opinion delivered on the former appeal, the court erred in refusing to give appellant's requested instruction No. 24. No other instruction given covers the point.

*Jones & Campbell,* for appellee.

1. If a preponderance of the evidence showed that appellee was injured by the running of a train, there can be no doubt that thereupon a presumption of negligence on the part of appellant arose.

In view of the facts shown in evidence, it could not be said as a matter of law that appellee was guilty of contributory negligence. Moreover, contributory negligence does not destroy a presumption of negligence on the part of the defendant. 105 Ark. 188.

2. There is no error in the instruction with reference to the release. The evidence as to the facts surrounding the execution of the release, was conflicting and irreconcilable. The jury's verdict establishes the correctness of the plaintiff's version, and in the light of that evidence the *Hambright* case is controlling. 87 Ark. 614. See, also, 82 Ark. 105; 95 Ark. 150.

3.   Instruction 24 was abstract, and, if given, would have been prejudicial to appellee.   When the engineer saw appellee in his attempt to remove the speeder wheel and when he was only distant about three hundred feet, the only presumption the engineer could indulge was that Morgan might not get the wheel clear in time.   90 Ark. 403.

McCulloch, C. J.   This is an action based upon alleged liability for personal injuries done to plaintiff while working as section foreman in the employment of the defendant railway company, and the case has been here on a former appeal.   107 Ark. 202.   After being remanded, there was another trial which resulted in a verdict and judgment in favor of the plaintiff, from which another appeal has been prosecuted.   The testimony was, on the second trial, substantially the same as on the first, with one or two exceptions which will be mentioned later.   The facts are set out in detail in the former opinion, and need not be repeated.

The substance of the case is that the plaintiff was a section foreman, and was riding a speeder along the part of the track composing his section, and was accompanied by another man behind him on the speeder.   They were overtaken by a passenger train, and on discovering its approach, they stopped the speeder and got off, and then attempted to remove the speeder from the track.   They got it partially off of the track, but one of the wheels hung under the rail, and while they were still attempting to remove it, the plaintiff was struck by the train, and serious injury was inflicted.   Plaintiff was carried to a hospital, and after he was discharged, he made a settlement and executed a release in consideration of the payment of $45. He contends that the release was procured by fraud, deception and misrepresentation, and on that account he is not bound by it.   The former opinion became the law of the case, and this court, as well as the trial court, is bound by it so far as it applies to the questions raised on this appeal.   The testimony adduced by the plaintiff at the last trial, so far as it relates to the circumstances attending

the injury, is the same as before; but at the former trial, the defendant introduced the fireman and engineer as witnesses, and in this case adduced no testimony at all. The testimony of the plaintiff as to the circumstances under which the release was executed is slightly different from that given at the former trial.

It will be seen from a consideration of the facts, as set out in the former opinion that according to the undisputed evidence, the plaintiff and his companion saw the train as it approached and got down from the speeder, but the plaintiff was injured while they were attempting to remove the speeder from the track. It is also undisputed that the men on board the train must have seen the plaintiff engaged in attempting to remove the speeder, and we said in the former opinion that the only question in the case was "whether the enginemen discovered appellee to be in a position of peril from which he could not extricate himself in time to have prevented the injury to him and failed to use proper care to avoid the injury after such discovery." In other words, the turning point of the case was then, and is now, whether or not the trainmen were guilty of negligence after they discovered the plaintiff's peril.

(1-2-3-4)   It is contended in the first place that the court erred in giving an instruction to the effect that if the plaintiff was injured by the running of the train in this State, "then the presumption is that it was due to the negligence of said company." It is insisted that the instruction is in conflict with the decisions of this court on the subject of burden of proof in cases of this kind, and also in conflict with the following statement in the former opinion: "The burden of proof was upon appellee to show, in order to recover damages, that the employees in charge of the train discovered his perilous position in time to have avoided injuring him, and negligently failed to use proper means to do so after discovering his peril." While this language is found in the opinion, it was not meant to lay the rule down broadly that under every phase of this case the burden of proof is upon the ap-

pellee, nor that the proof at any stage did not make out a *prima facie* case of negligence. That view of it would put the opinion in direct conflict with other decisions of this court. We held in *St. Louis, I. M. & S. Ry. Co.* v. *Standifer*, 81 Ark. 275, that where an employee of a railroad company is struck by a train and injured while riding a hand-car, a *prima facie* case of negligence is made against the company, and that case has been followed in later ones. It is true that proof of contributory negligence on the part of an employee or of a traveler at a crossing overcomes the presumption of negligence, and places the burden on the injured party to show that there was negligence on the part of the servants of the company after discovery of the peril. But the burden is always upon the company to prove contributory negligence, and until it does so, the *prima facie* case arising from proof of the injury stands. A fair interpretation of the language quoted from the former opinion, when considered in the light of the remainder of the discussion therein, is that if the plaintiff was guilty of contributory negligence in remaining on the track, the burden rested on him to show that the trainmen discovered his perilous situation in time to avoid injuring him, and thereafter negligently failed to use ordinary care. We did not hold then, and do not hold now, as a matter of law, that he was guilty of contributory negligence, as that was a question for the jury. It was the duty of the plaintiff, after getting off of the speeder, to remove it from the track if he could do so consistently with the exercise of ordinary care for his own safety, but it was a question for the jury to say under the circumstances whether he was guilty of negligence in thus exposing himself to the danger from the approaching train.

(5) The court's refusal to give defendant's requested instruction No. 24 was error which we think calls for a reversal of the case. The instruction reads as follows:

"24. The engineer and fireman had a right, after seeing that plaintiff was upon the track, to rely upon the

presumption that plaintiff would get off the track and clear the danger from the train; and if it afterward became apparent that plaintiff was not going to get off the track, and from the time it became so apparent the engineer and fireman used reasonable care and diligence to stop the train or to avoid the injury, and could not reasonably do so by reason of the nearness of the engine to plaintiff, then your verdict should be for the defendant.''

(6)   This instruction presents the turning point of the case, for we said in the former opinion that the engineer ''had the right to rely upon the presumption that appellee would clear the track of the obstruction and remove himself to a place of safety, until he discovered that he would not do so, for it was only then that he would have known him to have been in a perilous position.'' The instruction quoted above stated the case in concrete form, and it should have been given. It is not embodied in any other instruction. The undisputed evidence is, as before stated, that the plaintiff had gotten off the speeder in safety, but remained to remove it from the track, and that the engineer saw him in that position. It is not, however, undisputed that the situation of the plaintiff was one of peril known to the engineer in time to have avoided the injury by the exercise of proper care. The jury might have drawn the inference from the testimony that the situation of the plaintiff was one not necessarily appearing to be perilous, and in this state of the proof, the defendant had the right to an instruction telling the jury that the engineer could indulge the presumption that the plaintiff would get off of the track and rescue himself from the danger, until there was something to indicate to him that the plaintiff would not do so. In the absence of this instruction, or one of similar import, the jury might have understood from the other instructions that if the engineer saw the plaintiff attempting to remove the speeder in time for the train to have been stopped or slowed up, it rendered the defendant responsible for the injury; whether the engineer had reason to suppose that the plaintiff would remove himself from the place of dan-

ger or not. We have held in many cases that where trainmen see a person on the track, they have a right to assume that he will get off in time to avoid a collision, unless it appears that such person is oblivious of his danger or is unable to extricate himself from the place of peril; and that principle, as embodied in the refused instruction indicated above, was applicable to this case. We are of the opinion, therefore, that the court erred in refusing to give this instruction, and that the case must be reversed on that account.

The court gave the following instruction at the request of the plaintiff, and over the defendant's objections:

"5. Before you can find for the plaintiff, you must find, from the preponderance of the evidence, that the duly authorized agents of the defendants fraudulently procured plaintiff to execute the release by falsely representing to him that his injury was not permanent, or that he would be given a permanent employment in the capacity of section foreman; and you must further find that the false and fraudulent representations were relied upon by plaintiff, and he was, by such representations, induced to execute the release."

(7) We do not think that the proof in this case justified a submission to the jury of fraudulent procurement of the release by false representations to the plaintiff that he would be given permanent employment. The testimony is that he was promised employment and that he was employed and worked for a time, and was then discharged. The testimony tends to show, too, that his discharge was without just cause, and that plaintiff was physically able to continue his labors. But this does not establish fraud in the promise said to have been made to him for permanent employment. The claim agent told him at the time the release was executed that they would give him permanent employment, and that he also received a similar assurance from the division engineer or the roadmaster, but there is no testimony which warrants the inference that those representations were made for any fraudulent purpose. The fact that plaintiff was aft-

erward discharged for what his superiors contended was good cause, does not tend to show that those who promised him employment at the time the release was executed did so fraudulently for the purpose of inducing him to sign the release. That question should not have been submitted to the jury, and we think that its submission in the instruction quoted above constituted prejudicial error.

(8) The testimony of the plaintiff was sufficient, however, to warrant the submission of the question whether or not the claim agent represented to him at the time he signed the release that it contained a contract for permanent employment, and thus constituted a false representation which was sufficient to avoid the contract. The testimony tends to show that the plaintiff is illiterate and could not more than sign his name, and that he did not read over the contract, but relied upon the assurance of the claim agent that it contained the stipulation with reference to permanent employment. That question was properly submitted to the jury and a finding in plaintiff's favor would not be disturbed.

(9) There is also testimony sufficient to warrant a finding that the physician or surgeon who treated the plaintiff at the hospital represented to him that he was not permanently injured, and that the settlement was induced by that statement. Under the doctrine of the case of *St. Louis, I. M. & S. Ry. Co.* v. *Hambright,* 87 Ark. 614, that constituted grounds for avoiding the release, whether the statements were made by the physician falsely or under mistake of fact. It is contended by counsel for the defendant that such is not the effect of the *Hambright* case, but a consideration of the opinion shows plainly that while in the opinion of one of the judges, the case could and should have been decided entirely on the question that the representation was fraudulent, the majority of the court based their views upon the decision of the law that even if the statement was not fraudulent, it constituted a mistake of fact which absolved the parties from the binding

force of the contract. The syllabus in that case correctly reflects the substance of the decision, and is as follows: ''If the chief surgeon of a railroad company in good faith represents to an injured employee that his injuries are slight and temporary, when they are serious and permanent, and thereby misleads him into signing a release of the railroad company from damages, such release is not binding.''

Other errors are assigned with respect to rulings of the court in giving and refusing instructions, but we find no other prejudicial error, and there is nothing further of sufficient importance to discuss. There are assignments of error with respect to improper argument of counsel, but as the case is to be reversed on other grounds, it is unnecessary to discuss those assignments.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

WOOD and HART, JJ., dissent.*