# ELLA CLARK v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation.

(L.R.A.—, —, 162 N. W. 406.)

Railway    trains — passenger — accident — injuries    sustained — settlement
made — release given — inducements to make — false representations —
material facts — rescission of — knowledge of falsity — absence of — not
material — intent not material.

1. Where a person who receives injuries while a passenger upon a railway
train is induced to make settlement of, and release, his cause of action
against the railway company by reason of false representations of material
facts made by the claim agent, during the negotiations of settlement, and
prior to the execution of the release, such settlement and release may be
rescinded and avoided, even though such false representations were made
without knowledge of their falsity and without wrongful or fraudulent intent
on the part of the claim agent.

Passenger — injury — damages — release given — settlement made — action
at law — may be maintained — cancelation of release — decree for — not
necessary.

2. A release given by such passenger may be avoided in an action at law,
and an action for damages maintained, without first obtaining a decree can-
celing the release.

Opinion filed April 18, 1917.

Appeal from the District Court of Stark County; *Crawford, J.*
Affirmed.

*Watson & Young* and *E. T. Conmy*, for appellant.

"Where the signature of a firm name to an instrument shows that it
was intended to be the act of all the parties, effect must be given to it
accordingly, although only one of them is named in the body of the in-
strument." Also,

"When, in an action at law upon his bond, the defendant sets up
that it was procured from him by fraud, no evidence in support of the
plea is admissible except that which relates to the execution of the in-
strument." George v. Tate, 102 U. S. 564, 26 L. ed. 232.

"Proof of fraudulent representations by the parties, beyond the re-
citals in the bond, to induce its execution by plaintiff in error was prop-

erly rejected." Hartshorn v. Day, 19 How. 211, 15 L. ed. 605; Oster-hout v. Shoemaker, 3 Hill, 513; Belden v. Davies, 2 Hall, 433; Fran-chot v. Leach, 5 Cow. 506.

"The plaintiff's remedy is by a direct proceeding to avoid the instrument." Irving v. Humphrey, 1 Hopk. Ch. 284.

Fraud in the execution of the instrument may be shown in an action at law. But where the fraud claimed relates to fraudulent misrepresentations as to collateral matters, or as to the nature and value of the consideration, resort must be had to a court of equity for relief. Papke v. G. H. Hammond Co. 192 Ill. 631, 61 N. E. 910; Chicago City R. Co. v. Uhter, 212 Ill. 174, 72 N. E. 196.

False and fraudulent representations as an inducement to sign a release of claim for damages for injuries constitute an equitable, and not a legal, defense. Shampeau v. Connecticut River Lumber Co. 42 Fed. 760; George v. Tate, 102 U. S. 564, 570, 26 L. ed. 232, 233; Kosztel-nik v. Bethlehem Iron Co. 91 Fed. 606; Wagner v. National L. Ins. Co. 33 C. C. A. 121, 61 U. S. App. 691, 90 Fed. 395; Union P. R. Co. v. Whitney, 117 C. C. A. 392, 198 Fed. 788; Och v. Missouri, K. & T. R. Co. 130 Mo. 27, 36 L.R.A. 442, 31 S. W. 966; Pacific Mut. L. Ins. Co. v. Webb, 84 C. C. A. 603, 157 Fed. 155, 13 Ann. Cas. 752; Hartshorn v. Day, 19 How. 211, 15 L. ed. 605; Union P. R. Co. v. Harris, 158 U. S. 326, 39 L. ed. 1003, 15 Sup. Ct. Rep. 843, 10 Am. Neg. Cas. 585; Texas & P. R. Co. v. Daschiell, 198 U. S. 521, 49 L. ed. 1150, 25 Sup. Ct. Rep. 737, 18 Am. Neg. Rep. 679.

Distinction in the form only of action is abolished. Law and equity still remain two distinct systems. Sykes v. First Nat. Bank, 2 S. D. 242, 49 N. W. 1058.

In such case it is necessary to determine from the pleadings the relief sought, the mode and scope of the exercise of such jurisdiction and power, the judgment or decree to be entered, and the office and effect thereof. McCormack v. Phillips, 4 Dak. 522, 34 N. W. 39; Comp. Laws 1913, § 7608; Barry v. Traux, 13 N. D. 131, 65 L.R.A. 762, 112 Am. St. Rep. 662, 99 N. W. 769, 3 Ann. Cas. 191; Smith v. Kunert, 17 N. D. 121, 115 N. W. 76; Cotton v. Butterfield, 14 N. D. 465, 105 N. W. 236; Laffy v. Gordon, 15 N. D. 282, 107 N. W. 969.

The question of whether or not a written instrument shall be set aside

is a matter of purely equitable jurisdiction. Jasper v. Hazen, 4 N. D. 3, 23 L.R.A. 58, 58 N. W. 454; Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 1012; Brummond v. Krause, 8 N. D. 573, 80 N. W. 686; Patnode v. Deschenes, 15 N. D. 100, 106 N. W. 573; Anderson v. Anderson, 17 N. D. 275, 115 N. W. 836; Ingwaldson v. Skrivseth, 7 N. D. 388, 75 N. W. 772.

"Where the issue raised by the reply was of an equitable nature and controlled by equitable rules, the case at law must fall, and the motion for judgment for defendant should have been granted." People v. Bailey-Marsh Co. 29 N. D. 355, 151 N. W. 18, 8 N. C. C. A. 516; Albrecht v. Milwaukee & S. R. Co. 87 Wis. 105, 41 Am. St. Rep. 30, 58 N. W. 74; Chicago City R. Co. v. Uhter, 212 Ill. 174, 72 N. E. 196; Hartley v. Chicago & A. R. Co. 214 Ill. 78, 73 N. E. 398.

There is no proof of fraud here sufficient to set aside the release in question. It is elementary that the plaintiff, in order to establish fraud and make a case, must prove the elements which go to make up and constitute fraud. There is no proof of any intent to deceive. Rev. Codes 1905, § 5293, Comp. Laws 1913, § 5849; Wagner v. National L. Ins. Co. 33 C. C. A. 121, 61 U. S. App. 691, 90 Fed. 395; Page v. Bent, 2 Met. 371; Stubbs v. Johnson, 127 Mass. 219; Kelly v. Pioneer Press Co. 94 Minn. 448, 103 N. W. 330; Nelson v. Minneapolis Street R. Co. 61 Minn. 167, 63 N. W. 486.

Defendant acted in perfect good faith, and plaintiff executed the release in good faith, and with a full knowledge of all the facts known at the time. Chicago & N. W. R. Co. v. Wilcox, 54 C. C. A. 147, 116 Fed. 913; Atchison, T. & S. F. R. Co. v. Bennett, 63 Kan. 781, 66 Pac. 1018.

Settlement of a claim for injury to person and loss of property will not be rescinded on the ground that it was intended only to cover the loss of property, where there was no fraud, simply because the party seeking to set it aside failed to inform herself of what was contained in the agreement. Barker v. Northern P. R. Co. 65 Fed. 460; Owens v. Norwood White Coal Co. 157 Iowa, 389, 138 N. W. 483; Seeley v. Citizens Traction Co. 179 Pa. 334, 36 Atl. 229, 1 Am. Neg. Rep. 179; Jossey v. Georgia Southern & F. R. Co. 109 Ga. 439, 34 S. E. 664; Houston & T. C. R. Co. v. McCarty, 94 Tex. 298, 53 L.R.A. 507,

86 Am. St. Rep. 854, 60 S. W. 429, 9 Am. Neg. Rep. 383; Kane v. Chester Traction Co. 186 Pa. 145, 65 Am. St. Rep. 846, 40 Atl. 320.

"The effect of a release of a claim for personal injuries cannot be overcome in the absence of fraud in the execution thereof, where it appears that the plaintiff, having ability to read, did not read the same." Hartley v. Chicago & A. R. Co. 116 Ill. App. 277, 214 Ill. 78, 73 N. E. 398; Atchison, T. & S. F. R. Co. v. Higgins, 9 Kan. App. 672, 59 Pac. 175; Chicago, R. I. & T. R. Co. v. Williams, 37 Tex. Civ. App. 198, 83 S. W. 248; Rutherford v. Rutherford, 55 W. Va. 56, 47 S. E. 240; Spitze v. Baltimore & O. R. Co. 75 Md. 162, 32 Am. St. Rep. 378, 23 Atl. 307; McFarland v. Missouri P. R. Co. 125 Mo. 253, 28 S. W. 590.

"Where there is no evidence of want of sufficient mutual capacity to execute a release, that question should not be left to the jury." Och v. Missouri, K. & T. R. Co. 130 Mo. 27, 36 L.R.A. 442, 31 S. W. 962.

"It is absolutely necessary that one plead in avoidance of a defense of release." Emerson v. Knower, 8 Pick. 63; Cordner v. Roberts, 58 Mo. App. 440.

"A written release cannot be overthrown by slight evidence of fraud; it must be clear, precise, and convincing." Hicks v. Harbison-Walker Co. 212 Pa. 437, 61 Atl. 958; Fuller v. Madison Mut. Ins. Co. 36 Wis. 603; Sanger v. Dun, 47 Wis. 615, 32 Am. Rep. 789, 3 N. W. 388; Upton v. Tribilcock, 91 U. S. 50, 23 L. ed. 205; Albrecht v. Milwaukee & S. R. Co. 87 Wis. 105, 41 Am. St. Rep. 30, 58 N. W. 74; Parlin v. Small, 68 Me. 290; Brown v. Blunt, 72 Me. 415; Martin v. Berens, 67 Pa. 459; Cannon v. Jackson, 40 Ark. 417.

"In an action at law a written release introduced by defendant cannot be impeached for fraud not affecting the execution of it, but going only to the consideration." McCall v. Bushnell, 41 Minn. 37, 42 N. W. 546; Hartley v. Chicago & A. R. Co. 214 Ill. 78, 73 N. E. 398; Seeley v. Citizens Traction Co. 179 Pa. 334, 36 Atl. 229, 1 Am. Neg. Rep. 179.

"It conclusively appears that he carelessly signed the release without reading it himself or having it read to him, and that no mistake of the contents was made." Ingwaldson v. Skrivseth, 7 N. D. 395, 75 N. W. 772; Nelson v. Minneapolis Street R. Co. 61 Minn. 167, 63 N. W. 486; McCall v. Bushnell, supra; Kelly v. Pioneer Press Co. 94 Minn. 448,

103 N. W. 330; Kilmartin v. Chicago B. & Q. R. Co. 137 Iowa, 64, 114 N. W. 522; Nason v. Chicago, R. I. & P. R. Co. 140 Iowa, 533, 118 N. W. 751.

*Casey & Burgeson,* for respondent.

The release of claim for damages and settlement signed by plaintiff can be set aside in this, an action at law, for the fraud and misrepresentations attendant upon its procurement. 34 Cyc. 1105, 1106; Comp. Laws 1913, § 5842.

Any act fitted and intended to deceive is sufficient ground for setting aside release of claim for damages for injuries sustained. Comp. Laws 1913, §§ 5844, 5849, 5851; Bank of Spearfish v. Graham, 16 S. D. 49, 91 N. W. 340; Reddington v. Blue, 168 Iowa, 34, 149 N. W. 933; Rauen v. Prudential Ins. Co. 129 Iowa, 725, 106 N. W. 198; O'Brien v. Chicago, M. & St. P. R. Co. 89 Iowa, 644, 57 N. W. 425.

"A release of all claims, which is pleaded as a bar to an action at law, may, in that action, be shown to have been obtained by fraud, misrepresentation, or undue influence, if all the parties to the release are parties to the action; and the finding of the jury upon the question of fraud has the same force as their verdict upon any other issue in the action." Bussian v. Milwaukee, L. S. & W. R. Co. 56 Wis. 325, 14 N. W. 452; Missouri P. R. Co. v. Goodholm, 61 Kan. 758, 60 Pac. 1066; Pople v. Bailey-Marsh Co. 29 N. D. 355, 151 N. W. 18, 8 N. C. C. A. 516.

However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract, and such a contract may be fully explained. Comp. Laws 1913, §§ 5907, 5908.

"Whether a passenger's release of claims for personal injury was executed with knowledge of its contents, and whether it was procured by fraud, are questions for the jury." Comp. Laws 1913, § 5834; Brown v. Ann Arbor R. Co. 183 Mich. 574, 149 N. W. 1031.

There is ample proof of fraud and misrepresentation to support the verdict in this case. That one who has made a written surrender of a valuable writing, or release of a subsisting cause of action, may repudiate the same upon sufficient showing of fraud or mistake, even where the demand thus released is disputed and unliquidated, is too

well established to admit of controversy. Rauen v. Prudential Ins. Co. 129 Iowa, 725, 106 N. W. 198, and cases cited.

"A specific intent to defraud need not in all cases be established in order to avoid a release, where the person executing it has in fact been misled as to its meaning and effect." Pople v. Bailey-Marsh Co. supra; Lusted v. Chicago & N. W. R. Co. 71 Wis. 391, 36 N. W. 857; Bliss v. New York C. & H. R. R. Co. 160 Mass. 447, 39 Am. St. Rep. 504, 36 N. E. 65.

"Release of claim for personal injuries held avoided as for mistake of fact by physician's representations that injuries were not permanent, even though not made fraudulently." St. Louis, I. M. & S. R. Co. v. Morgan, 115 Ark. 529, 171 S. W. 1187; Pierce v. Seattle Electric Co. 78 Wash. 167, 138 Pac. 666; Platt v. American Cement Plaster 169 Iowa, 330, 151 N. W. 403; Bussian v. Milwaukee, L. S. & W. R. Co. 56 Wis. 325, 14 N. W. 452; Peterson v. Chicago, M. & St. P. R. Co. 38 Minn. 511, 39 N. W. 485; Haigh v. White Way Laundry Co. 164 Iowa, 143, 50 L.R.A.(N.S.) 1091, 145 N. W. 473.

"Consent is not mutual unless the parties all agree upon the same thing in the same sense." Comp. Laws 1913, § 5857; Silander v. Gronna, 15 N. D. 552, 125 Am. St. Rep. 616, 108 N. W. 544; Kaster v. Mason, 13 N. D. 107, 99 N. W. 1083.

PER CURIAM.

A rehearing was ordered in this case. The former opinion, which has not been reported, was prepared by Mr. Justice Burke. The reargument was had after he had ceased to be a member of the court. The controlling legal questions involved are stated in the syllabus, and after a careful consideration thereof by the present members of the court, we reaffirm the legal conclusions stated in the syllabus, and readopt the former opinion, which is as follows:

"On the 28th of September, 1913, plaintiff was a passenger upon one of defendant's regular passenger trains from Dickinson to Gladstone. This train stopped about a mile and a half from Gladstone; a heavy freight train running in the same direction struck it from the rear, and plaintiff was injured. She was taken to Gladstone, which by the way was her destination, and placed in the house where her stepmother and stepsister resided. A few hours later the company's

physician, Dr. Wyrens, examined her body and told her that her injuries were very slight, and that she would be well and at work within two or three days. The following day a claim agent called while she was still in bed, and effected a settlement for $100. Plaintiff claims that said claim agent told her that he had seen Dr. Wyrens and had been told that her injuries were slight and that she would be at work within three or four days, or a week at the most. She further testified that the claim agent told her repeatedly that she was not badly injured, and that if she took her case to a lawyer, most of the money that she recovered would go to him, citing instances occurring in Dickinson. Finally she signed a release and received a check for $100. Plaintiff testifies that she afterwards discovered that her back had been seriously injured, as well as her knee, and she thereupon repudiated the settlement, returned the check, and brought this action. Defendant relied wholly upon the release. At the close of the testimony it moved that the court direct a verdict in its favor upon the ground that the evidence was insufficient to support any verdict and insufficient to go to the jury on the question of fraud in procuring the execution of the release. At the conclusion of his brief filed in this case defendant says: "Summing up, it is the contention of the defendant:"

"First. That all the testimony offered here only tends to show some fraud as to collateral matters inducing the plaintiff to sign a release, and is a matter purely cognizable by a court of equity.

"Secondly. There is absolutely no testimony shown here sufficient to send the case to the jury and let them pass upon the question of fraud."

(1) Taking up the first proposition that the question of the sufficiency of the release was one cognizable in a court of equity, we find the authorities against his contention. The question is a question of fact for the jury. At 34 Cyc. 1105, 1106, the rule is stated: "All questions of fraud, collusion, and misrepresentation in the obtaining or execution of a release are for the jury as is also the question whether a release of plaintiff's claim was obtained by defendant in good faith with a full understanding on plaintiff's part of his legal rights."

Bank of Spearfish v. Graham, 16 S. D. 49, 91 N. W. 340; Moore v. Copp, 119 Cal. 429, 51 Pac. 630; Reddington v. Blue, 168 Iowa, 34, 149 N. W. 933, where the following language is found: "This in-

struction is challenged on many grounds. One is that the release cannot be avoided in an action at law, and that plaintiff's only remedy was to go into a court of equity to have the same reformed or rescinded. There is nothing in this point. Under our liberal rules of procedure it was proper for plaintiff to avoid the release by proof of fraud or mistake." (Cases cited.)

Rauen v. Prudential Ins. Co. 129 Iowa, 725, 106 N. W. 198; Bussian v. Milwaukee, L. S. & W. R. Co. 56 Wis. 325, 14 N. W. 452, wherein it is said: "A release of all claims, which is pleaded as a bar to an action at law, may, in that action, be shown to have been obtained by fraud, misrepresentation, or undue influence, if all the parties to the release are parties to the action, and the finding of the jury upon the question of fraud has the same force as their verdict upon any other issue in the action." In Missouri P. R. Co. v. Goodholm, 61 Kan. 758, 60 Pac. 1066, it is said: "If the release was procured by misrepresentation and fraud, it may be ignored by Goodholm, and an action for the injuries actually suffered may be maintained. It is not necessary that it should be first set aside in a proceeding in equity." In Pope v. Bailey-Marsh Co. 29 N. D. 355, 151 N. W. 18, 8 N. C. C. A. 516, it is merely held that the facts in that case were undisputed and were, therefore, a question for the court. It was not even intimated that the question was not ordinarily one for the jury. So much for the contention that the issues were one in equity for the court.

(2) The next question raised by appellant is the sufficiency of the evidence to justify the submission of the question of the release to a jury. In the brief it is said: "We claim that there is absolutely no proof of fraud shown here sufficient so that a jury can put its hands upon the case. . . . The evidence not only fails to be clear and definite and free from doubt, but that it is not even sufficient to make out a prima facie case of fraud."

A discussion of this proposition may be roughly divided into two parts: a discussion of the law, and, second, its application to the facts in this case. Two representations were made to this woman to induce her to settle,—those by the company's physician and those by the claim agent. We need discuss only the statement made by the physician. A discussion of the law and a *résumé* of the cases under this heading can be had by consulting notes at 5 L.R.A.(N.S.) p. 663, and 50

L.R.A.(N.S.) 1091. These notes are so full that we will try no improvement thereon. At the beginning of the note at 5 L.R.A.(N.S.) it is said: "It is difficult to formulate a general rule which will cover the validity of every release procured by, or under the influence of, a physician acting as agent of him for whose benefit the release was obtained, as each case will be governed by the particular facts of that case. It may be stated, however, that the courts do not favor 'ambulance chasing' on the part of agents of persons whose negligence has caused an injury."

The first case cited in that note is Missouri P. R. Co. v. Goodholm, supra, where a passenger was negligently injured in a railway wreck, and was treated by a physician of the railway company, who told him that his injuries were slight and temporary, thus inducing a release of all claims for damages. It was held that he was not bound by such release. The next case cited in the note is Eagle Packet Co. v. Defries, 94 Ill. 598, 34 Am. Rep. 245, 2 Am. Neg. Cas. 634, to the same effect. The next case cited is Jones v. Gulf, C. & S. F. R. Co. 32 Tex. Civ. App. 198, 73 S. W. 1082, wherein the company physician and claim agent stated that the woman's injuries were slight, and that she would be well in a few weeks and would be able to do and perform her usual duties. The release was set aside. To the same effect was Houston & T. C. R. Co. v. Brown, — Tex. Civ. App. —, 69 S. W. 651. It was held that similar statements of the physician, though honestly made in the belief by the physician that they were true, would justify a rescission of the settlement. In International & G. N. R. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1189, the physician stated that the injuries were slight and that she would soon recover, and that the sum offered her was more than she would recover at law. The release was set aside. In Galveston, H. & S. A. R. Co. v. Cade, — Tex. Civ. App. —, 93 S. W. 124, the physician represented that Cade had recovered and would suffer no more, and a settlement was effected. Upon proof that the injuries were permanent, a rescission of the settlement was allowed. However, in Gulf, C. & S. F. R. Co. v. Huyett, 99 Tex. 630, 5 L.R.A.(N.S.) 669, 92 S. W. 454, a slightly different rule was announced. Also in Quebe v. Gulf, C. & S. F. R. Co. 98 Tex. 6, 66 L.R.A. 734, 81 S. W. 20, 4 Ann. Cas. 545, and Doty v. Chicago, St. P. & K. C. R. Co. 49 Minn. 499, 52 N. W. 135. In those cases

it was held that the physician had not made any statement of ultimate fact upon which the patient had a right to rely, but had expressed an opinion merely as to the time when recovery would occur. In most of those cases the court, in addition, discusses other features besides the physician's representation.

At 50 L.R.A.(N.S.) 1091, a supplemental note is given, and from an examination of the cases therein cited it is at once apparent that the courts have swung strongly in favor of rescission of the release if the physician made any false representations, whether it was his honest opinion or not. Something over twenty cases were decided from the time of the first note in 1906 to the time of the second in 1914, and since the printing of the note we have found several cases following the laws therein announced. The latest of these is Jacobson v. Chicago, M. & St. P. R. Co. — Minn. —, L.R.A.1916D, 144, 156 N. W. 251, a case, by the way, wherein the facts were strikingly similar to those in the case at bar. We quote: "Defendant's contention is that to entitle plaintiff to rescind the release it was incumbent on him to show that he was induced to execute it by the intentional deception of the physician and claim agent, and that the court erred in not so charging the jury. We do not sustain the point. It may be conceded that an essential element of the old common-law action of deceit is intentional fraud and deception, and that, as a general rule, no recovery can be had in such an action where intentional deception does not appear. And there are many authorities holding to a strict application of the rule, and as requiring an affirmative showing of an intent to defraud and deceive in all cases where relief is sought on the ground of fraudulent representations. As thus strictly applied, much injustice has resulted, and the courts have ingrafted upon the rule modifications and qualifications, and the present trend of judicial opinion does not require in all cases a showing of an evil intent. The injury suffered by the defrauded party may be just as great whether the fraud was intentional or unintentional. So in actions the result of which places the parties *in statu quo,* restoring to each what he parted with, equity will grant relief where the representations which induced and brought about the contract were, in fact, false, though made in good faith; the additional requirement being that the representations must appear to have been material, not mere opinion, and of a character to justify re-

liance thereon by the defrauded party. In such cases the courts grant relief either upon the ground of fraud in law, sometimes spoken of as constructive fraud, or mutual mistake. It is not material whether it be termed fraud in law or mistake; the result is the same in either case. The rule now often applied is tersely summed up by the Iowa supreme court in the statement that a 'party cannot falsely assert a fact to be true and induce another to rely thereon to his prejudice, and thereafter hide behind the claim that he did not know it was false at the time he made it." Haigh v. White Way Laundry Co. 164 Iowa, 143, 50 L.R.A. (N.S.) 1091, 145 N. W. 473. The rule has frequently been stated and applied in our former decisions, both in actions for a rescission of the contract and where the alleged fraud has been presented as defensive matter. . . . [Cases cited.] In the case at bar the physician representing defendant made a physical examination of plaintiff a short time after the accident. Upon the examination so made he represented to plaintiff the facts heretofore stated, which were repeated by the claim agent. The jury was fully justified in finding that the representations were, in fact, untrue, though not intentionally so, and that they were made to induce a settlement of plaintiff's claim for damages. Plaintiff relied, and had the right to rely, upon the representations, and the jury properly found that he was induced thereby to make the settlement and sign the release. This brings the case within the rule of the authorities cited. The representations, aside from the statement that no bones were broken, were of matters of substance, and not the mere opinion of the physician. Marpley v. Minneapolis & St. L. R. Co. 115 Minn. 262, 132 N. W. 333, Ann. Cas. 1912D, 1083." St. Louis, I. M. & S. R. Co. v. Morgan, 115 Ark. 529, 171 S. W. 1187.

The sections of our Code applicable are § 5842, Comp. Laws 1913, reading as follows: "The consent of the parties must be (1) free, (2) mutual, and (3) communicated by each to the other." Section 5844, Comp. Laws 1913, reads: "An apparent consent is not real or free when obtained through (1) duress, (2) menace, (3) fraud, (4) undue influence, or (5) mistake." Section 5849, Comp. Laws 1913, reads: "Actual fraud within the meaning of this chapter consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract. . . . 2. The positive assertion in a

36. N. D.—33.

manner not warranted by the information of the person making it of that which is not true, though he believes it to be true. . . ." Section 5851 reads, "Actual fraud is always a question of fact."

That the release should be set aside in this action if the evidence warranted the same seems to us to be pretty well supported by the authorities which we have cited. Section 5834, Comp. Laws 1913, reads: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which, if known by him, must have materially affected his settlement with the debtor." See notes at 48 L.R.A.(N.S.) 449, and 11 L.R.A.(N.S.) 201; Derry v. Peek, L. R. 14 App. Cas. 337, 58 L. J. Ch. N. S. 864, 61 L. T. N. S. 265, 38 Week. Rep. 33, 54 J. P. 148, 12 Eng. Rul. Cas. 250; Davis v. Central Land Co. (Davis v. Trent) 162 Iowa, 269, 49 L.R.A.(N.S.) 1219, 143 N. W. 1073. With the law well settled, we proceed to an analysis of the evidence in this case. As already stated, plaintiff was carried to her stepmother's home, and was shortly thereafter treated by the company's physician. He told her that she had no serious injury and would be well within three or four days. The next day the claim agent called upon her, and repeated to her the diagnosis of the doctor. He further told her that if she went to law, the lawyers would get any money secured from the railway company, and cited an instance from Dickinson, her home town.

We quote briefly from her testimony:

Q. What did Mr. Every tell you that the doctor reported to him as to your injuries?

A. A bruised knee.

Q. And how long did he say before you would be up and around?

A. Three or four days.

Q. What did he say as to the seriousness of your injuries?

A. Why, they were simply made light of. . . .

Q. What did he (the claim agent) say? tell the whole thing that he said to you when he presented that instrument for signature?

A. He said, just handed it to me and said, "Of course, you won't mind signing this," he said, "there is nothing in it I assure you," and I signed it.

Q. Did you object to signing anything until after you had seen your husband or somebody you could consult with?

A. No, I didn't want to settle, Mr. Casey.

Q. What did you say and what did you do?

A. Why, I told him I did'nt know, I had no idea, and he said I would be up in three or four days, and, well I didn't know and I told him that much, and the answer I got was, "You are not so badly hurt but what you can settle to-night."

Q. And what did you think you were signing?

A. Why I had been told by the company's physician that my knee was injured, but that I would be up and around in three or four days; and Mr. Every said the same thing and made light of it, and I thought I was signing a receipt for the money that I received for my knee.

Q. Would you have signed a release such as that, if you had known it was such an instrument?

A. No, sir, I would not. . . .

Q. In inducing you to sign this instrument, what, if anything, did he tell you about it being impossible for you to get damages if you went to law about it, or secured attorneys?

A. It was told that the lawyers at Dickinson were noted especially for thinking they could get anything they wanted from the Northern Pacific Railroad, and was given an example of Mr. Murtha against a man who had worked for the Northern Pacific, in which Mr. Murtha and a Mr. Styles in Minneapolis, two noted sharks for these kind of cases, had divided the money and given the man who was hurt—or less than he would have been given if he had settled directly with the railroad company, as he should have.

.   .   .   .   .   :   .   .   .   .   .

Q. Were you or were you not in bed when this talk was had about this instrument?

A. I had been lying where I was all day on the bed.

Q. And what condition were you in physically, were you nervous?

A. I was very nervous. I had people calling all day that had heard about the wreck and they had all asked me just how it happened, and I told them, and the excitement was great. It seemed each time I had told it, it made me more nervous because I could just go through it all again.

Q. Did he read exhibit "1" and "2" to you?

A. No, sir?

Q. Did you read it?

A. No, sir.

Q. What did he say, if anything, as to the amount offered you in settlement with regard to your injuries?

A. Why, he said that $100 was too large a sum for a bruised knee, was the objection he made.

. . . . . . . . . . .

A. I signed a receipt for a bruised knee, a receipt for money that I was supposed to get for it, and I was to be up in three or four days, the conditions, the only conditions I would sign anything under.

This testimony is corroborated by plaintiff's stepsister, and stepmother, and is not seriously disputed by defendant. There is testimony, of course, that plaintiff was an intelligent woman, capable of reading, and used to keeping books. On the other hand, it must be remembered that she was in bed, suffering from pain and shock, as well as from the excitement naturally following the terrible experience she had undergone; that she was away from her husband and without legal advice. That the claim agent was around the very next day before she was able to leave her bed. The jury probably found that she believed, and had a right to believe, that she was uninjured excepting in the knee, and that upon learning of the injury to her back she promptly repudiated the settlement and returned the check. It is apparent to anyone who reads the above testimony that there was, at least, a mutual mistake. That the courts will relieve from such mistakes is amply shown in the cases cited. We add: Lusted v. Chicago & N. W. R. Co. 71 Wis. 391, 36 N. W. 857; Bliss v. New York C. & H. R. R. Co. 160 Mass. 447, 39 Am. St. Rep. 504, 36 N. E. 65; St. Louis, I. M. & S. R. Co. v. Morgan, 115 Ark. 529, 171 S. W. 1187; Pierce v. Seattle Electric Co. 78 Wash. 167, 138 Pac. 666; Platt v. American Cement Plaster Co. 169 Iowa, 330, 151 N. W. 403; Bussian v. Milwaukee, L. S. & W. R. Co. 56 Wis. 325, 14 N. W. 452; Peterson v. Chicago, M. & St. P. R. Co. 38 Minn. 511, 39 N. W. 485; Haight v. White Way Laundry Co. 164 Iowa, 143, 50 L.R.A.(N.S.) 1091, 145 N. W. 473; Drake v. Fairmont Drain Tile & Brick Co. 129 Minn. 145, 151 N. W. 914;

Brooks v. Hamilton, 15 Minn. 26, Gil. 10; Hedin v. Minneapolis Medical & Surgical Inst. 62 Minn. 146, 35 L.R.A. 417, 54 Am. St. Rep. 628, 64 N. W. 158; Busterud v. Farrington, 36 Minn. 320, 31 N. W. 360; Bullitt v. Farrar, 42 Minn. 8, 6 L.R.A. 149, 18 Am. St. Rep. 485, 43 N. W. 566; see also 14 Am. & Eng. Enc. Law, 94; Holcomb v. Noble, 69 Mich. 396, 37 N. W. 497; Johnson v. Gulick, 46 Neb. 817, 50 Am. St. Rep. 629, 65 N. W. 883; Pattison v. Seattle, 55 Wash. 625, 104 Pac. 825; Carroll v. United R. Co. 157 Mo. App. 247, 137 S. W. 303; Missouri, K. & T. R. Co. v. Maples, — Tex. Civ. App. —, 162 S. W. 426; Kathan v. Comstock, 140 Wis. 427, 28 L.R.A.(N.S.) 201, 122 N. W. 1044. We quote from Haight v. White Way Laundry Co. "But in this case more than an opinion was given to induce settlement. Substantive facts were stated as a basis of the opinion; to wit; that the injuries were trifling; that the tendons of the hand were not injured. These are the assertions of distinct facts which had relation to, and direct bearing upon, the extent of the defendant's liability to the plaintiff; statements which, if true, tended to create in the mind of the plaintiff the impression 'that she would entirely recover therefrom and her hand would be as well as ever.'" Woods v. Wikstrom, 67 Or. 581, 135 Pac. 192. From this last case we quote: "He seems not to have had any advice from any friend competent to advise him. He was weak and still in the hospital, and defendant was pressing for the settlement before he should be out, probably because he wanted a release before the plaintiff would consult counsel. If the defendant had been willing to be fair, he would not have pressed the plaintiff for a settlement until the latter had consulted a lawyer as to his rights and the defendant's liability."

Without encumbering this opinion with more citations, we say that while there may be some earlier cases to the contrary, all, or nearly all, modern cases are against appellant's contentions. In line with those decisions and our own judgment, we hold that there was sufficient evidence to go to the jury upon the question of the rescission of plaintiff's release. The jury has passed upon this question adversely to appellant, and there are no errors in the proceeding. The judgment is accordingly affirmed.