MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* LEWIS.

4-8051                                          199 S. W. 2d 325

Opinion delivered February 3, 1947.

Rehearing denied March 3, 1947.

72

*Thos. B. Pryor* and *Thos. Harper,* for appellant.

*Howell & Howell,* for appellee.

Robins, J.   Appellee, a negro "extra gang" laborer, while working for appellant on appellant's right-of-way, was struck and injured by a piece of ice thrown from a passing train by one of appellant's employees. Appellee brought suit against appellant for $10,000 damages, alleging that he had been permanently injured by the negligence of appellant's servant as aforesaid. Appellant filed answer in which it was not denied that appellee was injured at the time and place and in the manner set forth in the complaint, but the extent of the injury as alleged by appellee was denied and appellant set up as a defense that, after the injury, appellant and appellee had made a compromise, under which appellee had been paid the sum of $1,500, and had executed a release of his claim growing out of said injury.

Appellee filed a response in which he alleged that the release was not binding on him because he had been induced to execute it by misstatements of appellant's physician and claim agent as to the extent of the injury.

The trial jury returned a verdict in favor of appellee for "$5,000, less the $1,500 already paid him; net $3,500."

From judgment entered, on the verdict this appeal is prosecuted.

For reversal these contentions are urged by appellant:

1. That appellee's cause of action against appellant was barred by the release, and the lower court should have instructed the jury to find for appellant.

2. That the amount of the verdict was excessive.

## I.

Both bones, between the knee and the ankle, in the left leg of appellee were broken as a result of being struck by the piece of ice. He was taken to a hospital where he was treated by the assistant division surgeon of appellant. Appellee's leg was put in a cast, and he went home on the first Monday in September, but was never able to return to his work for appellant.

After some prior negotiations a claim agent of appellant made a settlement with appellee for the agreed sum of $1,500, took a release from him and gave him a check for $1,500, which appellee cashed. Appellee could not read, but could sign his name. The release was read over to appellee, before he signed it, by appellant's roadmaster. It is set forth in the release that it was not made in reliance on anything said by a "company physician, claim agent, or other employee" of appellant.

Appellee testified that the assistant surgeon of appellant told him that his leg was in fine shape, that he would be able to go back to work in a few days and would walk as well as ever; that the claim agent told him he was doing fine and that it looked like he could go back to work in a few days; that he saw the doctor about two weeks before the settlement; that he relied on the statement of the claim agent in making the settlement; that he had never been able to go back to work on the railroad; that before he worked for appellant he had farmed, but since his leg was broken he had been unable to do any farm work; that he still suffered pain from the injury to

his leg; that in settling he was using his own judgment based on what the doctor said; that he thought the settlement was fair when he made it; that if he had known the real condition of his leg he would not have made the settlement; that he was told that his leg would get well and that was why he made the settlement.

A physician testified on behalf of appellee that he had made X-ray pictures of appellee's leg; that the pictures showed there had been a fracture through the larger leg bone; that the fracture had healed firmly, but with considerable deformity; that the leg is crooked and "bows"; that appellee "has got all of the union that he could ever get"; that witness "would not advise breaking it over"; that witness "would advise him to go through life in the manner that his leg is now"; that he will have a disability for the rest of his life; that there is some difference in the length of appellee's legs; that this type of fracture was very difficult to handle.

Appellant's division surgeon and his assistant testified that appellee had a good recovery considering his age, but conceded that appellee had a "bow" in the bones of his leg as a result of this injury. The assistant division surgeon also testified that he did not think it advisable to break the bone to straighten it; that he did assure appellee he would be all right, but did not tell him when he would be able to return to work; and that at the time he talked to the claim agent he believed that the leg would return to a normal condition and that appellee would have the same use of it as before.

The question of the validity of the release as a bar to appellee's action was submitted to the jury on an instruction, not complained of here, the effect of which was to tell the jury that it was not binding if the evidence showed that appellant's physician represented to appellee that his leg had properly healed and he would not have a permanent injury and that appellee relied on this representation in signing the release and it developed that his leg had not healed properly and that appellee did, in fact, have a permanent and disabling injury.

In the case of *F. Kiech Manufacturing Company* v. *James*, 164 Ark. 137, 261 S. W. 24, we held (headnote 4): "Where plaintiff, injured in defendant's employment, signed a release relying upon a mistaken opinion of the defendant's doctor that his injury was not permanent, he was not bound thereby, notwithstanding the release recites that he acted on his own judgment, and that no representations were made upon which he relied."

In the note to the decision in the case of *St. Louis-San Francisco Railway Company* v. *R. L. Cauthen* (112 Okla. 256), 241 P. 188, 48 A. L. R. 1447, at p. 1523, this language is used by the annotator: "But, notwithstanding the fact that they [releases] have sometimes expressly declared in effect that the releasor relied on his own judgment, and not on representations of others, such a declaration has been held not to preclude avoidance of the release on the ground of misrepresentations by the releasee's physician as to the nature or extent of the injuries." The F. Kiech Manufacturing Company case, *supra,* was cited in support of this rule.

The holding in the case of *Kiech Manufacturing Company* v. *James, supra,* was followed in the case of *Ozan Graysonia Lumber Company* v. *Ward,* 188 Ark. 557, 66 S. W. 2d 1074, where we held (headnote 8): "Where plaintiff, injured in defendant's employment, signed a release relying upon a mistaken opinion of defendant's doctor that his injury was not permanent, he was not bound thereby, though the release recited that he acted upon his own judgment, and that no representations induced him to make the settlement."

In discussing a similar question we said in the case of *Standard Oil Company of Louisiana* v. *Gill,* 174 Ark. 1180, 297 S. W. 1020: "The fact that a short time intervened, about 20 days, from his discharge to the time of the release, would not change the result, and neither would the fact that he was suffering at the time he signed same; the question being: Did he honestly rely on the assurance of his physicians that he would soon recover, and this was a question for the jury?" Other cases in which the same doctrine was enunciated are:

*St. Louis, I. M. & So. Ry. Co.* v. *Morgan,* 115 Ark. 529, 171 S. W. 1187; *Griffin* v. *St. Louis, Iron Mountain & Southern Railway Company,* 121 Ark. 433, 181 S. W. 278; *Sun Oil Company* v. *Hedge,* 173 Ark. 729, 293 S. W. 9; *Missouri Pacific Railroad Company* v. *Elvins,* 176 Ark. 737, 4 S. W. 2d 528; *National Life & Accident Insurance Company, Inc.,* v. *Hitt,* 194 Ark. 691, 109 S. W. 2d 426.

Appellee's testimony, as to the circumstances surrounding the execution of the release was not seriously contradicted by appellant's witnesses. The claim agent who made the settlement testified that a few days before the settlement was made he talked with the assistant surgeon of appellant about appellee's injury and (the claim agent) admitted that he "probably" told appellee that appellant's assistant surgeon had advised him (the claim agent) that appellee's leg was in good condition and that he would be able to go back to work about January first. But, conceding that there was a dispute in the testimony as to this phase of the case, such conflict was for the jury to settle, and, in determining whether the evidence was sufficient to support the verdict, we must give the evidence on behalf of appellee the strongest probative force that it will reasonably bear. *St. Louis, Iron Mountain & Southern Railway Company* v. *Coleman,* 97 Ark. 438, 135 S. W. 338.

We cannot say, when all the testimony is considered in the light of our pronouncements in the above cited cases, that the lower court erred in submitting the question of the validity of the release to the jury, or that the jury's finding that the release was executed under a mutual mistake of fact was without support in the evidence.

## II.

Nor can we say, as a matter of law, that the amount of the jury's verdict was excessive. Appellee was 55 years old at the time of his injury. He was illiterate and capable of doing only manual labor. There was testimony indicating that his ability to do this kind of work had been seriously impaired for the remainder of his life and that he would always have a certain amount of lameness.

Under this proof we cannot say that the amount awarded by the jury to appellee is so excessive as to entitle appellant to relief therefrom.

The judgment of the lower court is affirmed.

GRIFFIN SMITH, C. J., and McHANEY and HOLT, JJ., dissent.