THE MISSOURI PACIFIC RAILWAY COMPANY v. J. H. GOODHOLM.

**No. 11,560.**    (60 Pac. 1066.)

1. RAILROADS— *Injury to Passenger— Fraudulent Representations—Estoppel.* If a passenger negligently injured in a railroad wreck and at once treated ·by a physician of the railroad company is again visited by the physician and a claim agent of the company a few hours after the injury, and while nervous, weak, and sick, and, by false and fraudulent representations of the physician that his injuries are slight and temporary, is induced to execute a release of all claims for damages for a trifling amount, he will not be bound by such release. On the other hand, if the release is fairly obtained and understandingly executed, it will constitute an effectual bar to a recovery for the injuries.

2. ——— *Action to Cancel Release Unnecessary — Tender.* Where personal injuries have been suffered for which a liability exists, and a release therefor has been fraudulently procured, an action for damages may be maintained without first obtaining a decree to rescind or to cancel the release, and the plaintiff is not precluded from attacking a release so obtained, when it is set up as a defense, because he has not restored or tendered back the amount received by him at the time the release was obtained.

3. ——— *Testimony Insufficient.* To sustain a claim that plaintiff was induced to execute the release ·by false and fraudulent representations, it must appear that he relied and acted on such representations, and, upon an examination of the testimony herein, it is held insufficient to support a finding that he "believed such representations to be true and in executing such release relied and acted thereon."

Error from McPherson district court; MATTHEW P. SIMPSON, judge. Opinion filed May 5, 1900. Reversed.

*Waggener, Horton & Orr,* for plaintiff in error.

*Grattan & Grattan,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: On July 18, 1897, J. H. Goodholm was a passenger on a train of the Missouri Pacific

Railway Company which collided with a freight-train on the same track, and was thrown from his seat and suffered serious injuries. In his petition he alleged that the collision was due to the negligence of the company, set forth the injuries inflicted, and stated that he had sustained damages to the extent of $15,060. The company interposed the defense that Goodholm, for a consideration of $15, had settled his claim for damages, and had executed a full release and discharge therefrom. The reply was that the settlement and release were induced and obtained by misrepresentation and fraud of the railway company. A trial before a jury resulted in a verdict and judgment for Goodholm in the sum of $5500, and the company alleges error.

It appears that the collision occurred about noon on July 18, and when Goodholm got out of the wreck it was found that he had a cut on his cheek, a bruise on the back of the neck near the base of the skull, an injury to the top of his head, and a bruise on his knee. Doctor Brubaker, the local surgeon for the company at Lindsborg, was notified by the agent of the company of Goodholm's injury, and proceeded to his residence, where he made an examination of the injuries inflicted and dressed the wounds. On the evening of the same day the local agent of the company at Lindsborg, accompanied by Doctor Brubaker, again visited Goodholm and obtained from him a statement of the accident and the injuries inflicted. Early on the morning of the 19th the claim agent of the company arrived at Lindsborg, and, after procuring Doctor Brubaker to accompany him, visited Goodholm at his residence. After some conversation and negotiations, participated in by the claim agent, the doctor, and Goodholm, the injured man signed a paper, pur-

porting to release and forever discharge the company from all claims or liabilities growing out of the injuries sustained by him in the collision, in consideration of the payment to him of the sum of fifteen dollars.

In answer to particular questions of fact, the jury found that Goodholm received severe and lasting injuries, both mental and physical; that he was very weak and feeble in the afternoon and evening of July 18, and suffered intense headache and bodily pain; that he passed a restless and sleepless night; and that on the following morning, when he was visited by Doctor Brubaker and the claim agent, he was still weak and sick, and was suffering great pain. It was found, too, that the mental faculties of the plaintiff were weakened by the injuries, and have remained so ever since the collision. The jury found that the doctor did not give Goodholm his honest opinion when he told him that his injuries were slight and temporary, and that he would be able in a week to go to his usual labor; but, on the other hand, that he intended to deceive and mislead him, and that the company through its agents did impose on and use undue influence on the plaintiff, and failed to use the highest good faith in its dealings with him.

Among other findings, the jury answered that the release which was signed by Goodholm was read over to him and he was informed of its character and provisions, but that Earhart, the claim agent, and the doctor knowingly misrepresented facts and deceived him in order to induce him to sign the same, and that he believed the representations to be true and relied and acted on them in executing the release. It was also found that Goodholm was not mentally incapable of making a contract on that morning, but that he

signed the release without understanding or comprehending its import.   The findings further showed that Goodholm accepted the fifteen dollars which was paid to him in order to obtain the release, and that he did not return it to the railway company, or offer to return the same, prior to the commencement of the action.

It is first contended that there has been no rescission of the contract of settlement, and therefore that there was no cause of action existing in favor of Goodholm when he filed his petition.   If the release was procured by misrepresentation and fraud, it may be ignored by Goodholm and an action for the injuries actually suffered may be maintained.   It is not necessary that it should be first set aside in a proceeding in equity.   While the fraud charged is a ground of equitable jurisdiction, legal and equitable rights are administered under our system in a single court and in one form of proceeding, and the rights of the parties can be fully protected in an action such as the plaintiff brought.   A decree of rescission or to cancel the release was therefore not a prerequisite.

Nor do we think that Goodholm was precluded from attacking the release set up as a defense because the trifling amount paid when it was executed was not restored or tendered before the suit was brought. The general rule is that one who seeks to set aside a contract or conveyance should return or offer to return the consideration received for the same.   This rule is peculiarly applicable where the property or consideration is the thing in controversy ; or, rather, where the cause of action arises out of the fraudulent transaction that is attacked.   Here, a right of action existed prior to and independent of the execution of the release alleged to be fraudulent and void.   There

was an implied admission of liability of the company
to the extent of fifteen dollars, and as the amount
paid is conceded to be due, whatever the result of the
litigation, what good reason is there for returning it?
Restoration or tender is required on equitable con-
siderations, but what injustice or inequity could re-
sult to the company if the amount impliedly admitted
to be due is held and credited upon any recovery
against it? If the release is held to be binding, Good-
holm is entitled to the money paid ; and if he estab-
lishes a liability for the injuries apparently sustained
by him, it can be credited upon the recovery. In an
early case, where a voidable release had been pro-
cured upon the payment of a small sum of money, it
was claimed that the amount paid should have been
returned or tendered before the suit for damages was
brought, but the claim was denied, and it was held to
be sufficient that the defendant was given a credit in
the recovery upon the trial. (*Railroad Company v.
Doyle*, 18 Kan. 58.)

In *O'Brien v. Chi. M. & St. P. Ry. Co.*, 89 Iowa,
644, 57 N. W. 425, an action was brought to recover
damages for a personal injury, and the defense was
that there had been a full settlement of the claim,
and that upon payment of a sum of money the
plaintiff executed a written release fully discharging
the defendant. The plaintiff claimed and proved that
the settlement and release were obtained by fraud and
false representations, but defendant contended that
the action could not be maintained because it had
been brought without tendering back the money re-
ceived at the time of settlement. The court held that
the release having been obtained by fraud, the plaintiff
was entitled to retain the benefits received thereunder,
either by virtue of the settlement or the defendant's

original liability, and that a tender was not a pre-requisite.   The court remarked :

"Why should the plaintiff tender to the defendant that which the plaintiff was entitled to retain even if defeated in the action?   In that event he would re-tain the $250 by virtue of what the defendant con-tends is a valid transaction.   When the court directed the jury that if the plaintiff was entitled to recover, the sum paid at the alleged settlement should be de-ducted from the verdict, it was in effect a return of the money paid for the release."

The court of appeals of New York held :

"The rule that he who seeks to rescind an agreement upon the ground of fraud must place the other party in as good a condition as that in which he was when the agreement was made, is satisfied if the judgment asked for will accomplish that result, and in such case no offer to return that which was received is neces-sary." (*Harris v. Equitable Life Assurance Society*, 64 N. Y. 196.)

In *Kley v. Healy*, 127 N. Y., 555, 28 N. E. 593, the same court remarked :

"One who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain either by virtue of the contract sought to be set aside or of the original liability."

See, also, *Berry v. A. C. Ins. Co.*, 132 N. Y. 49, 30 N. E. 254 ; *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609 ; *C. R. I. & P. Ry. Co. v. Lewis*, 109 Ill. 120 ; *Bebout v. Bodle*, 38 Ohio St. 500 ; *Pierce v. Wood*, 23 N. H. 520 ; *Insurance Co. v. Hull*, 51 Ohio St. 270, 37 N. E. 1116, 25 L. R. A. 37 ; *Shannon v. The Pacific Mutual Life Ins. Co.*, 83 Wis. 507, 53 N. W. 878.

It is next contended that the opinions expressed and representations made by Doctor Brubaker to Goodholm at the time the release was executed were not fraudu-

lent and furnished no grounds for disregarding the release. It is true, as contended, that expressions of opinion or belief as to what will happen in the future, or of which knowledge in its strict sense cannot be had, are not fraudulent if made in good faith and with no intention to deceive. In the present case, however, it was contended that Doctor Brubaker did not act in good faith, and that he intentionally misrepresented the condition of Goodholm in order to obtain the release for a small sum of money. Testimony was introduced that Earhart, the claim agent, and Doctor Brubaker visited Goodholm within a few hours of his injury, when he was weak and feeble and was suffering with intense headache and bodily pain ; that he had just passed a restless and sleepless night; and that, taking advantage of his condition, the doctor represented that the injuries were slight or temporary, and that he would be able to return to his usual work in a few days. The claim agent and the doctor together represented the company in securing the release, and, if undue influence was exercised upon Goodholm and the release was obtained by misrepresentation and fraud of these parties, it is without binding force.

As tending to show bad faith, attention is called to the undue haste in procuring the release ; that it was obtained before Goodholm had recovered from the shock of the injuries, or before the extent or result of them could be determined by the best medical skill. The doctor testified that Goodholm was injured on the neck, "just about the second cervical vertebra"; that it was a dangerous place for a blow, and that it requires time to determine the effect of such an injury ; that sometimes a slight injury develops into a serious trouble, and it takes from twelve to forty-eight

hours to develop the result of such an injury.   Not-
withstanding this fact, the doctor, within twenty
hours and without waiting for developments, told
Goodholm that he would be able to return to his work
within a few days.

Then, again, testimony was introduced that the
doctor afterward told other persons that Goodholm
came within a hair's breadth of breaking his neck,
and that he intended to warn him against signing a
release of the railroad company, but that the claim
agent was so near at hand that he had no chance.
In view of this testimony, it cannot be said that there
is an absence of proof of bad faith, deception, and
fraud.

It is contended that because the release was fully
read over to him, and that he was informed of its na-
ture and character, and that the jury have found that
he was not mentally incapable at the time that it was
executed, the smallness of the amount, or his improvi-
dence in settling the claim against the company, will
not warrant the setting aside of the release.   If the
release was fairly obtained and understandingly exe-
cuted by the plaintiff, it is an effectual bar to an action
to recover for the injuries which he sustained.   On
the other hand, if undue influence was exercised upon
him when in a feeble and nervous condition, and false
and fraudulent representations were made to him in
order to obtain undue advantage over him, the release
will not avail as a defense.

A serious question is raised, however, as to the lack
of proof to sustain the claim that the misrepresenta-
tions of Doctor Brubaker actually induced the making
of the settlement and signing of the release.   The
jury specifically found that Goodholm " believed such
representations to be true, and in executing such re-

lease relied and acted thereon.'' We find no evidence in the record showing that Goodholm believed the false and fraudulent representations to be true and relied and acted on them in executing the release. On the other hand, in answer to a question, Goodholm expressly stated that he had no confidence in Brubaker as a doctor, and never had any. There is testimony that the representations were made to him immediately before the execution of the release, and it is insisted that there is a presumption that he did rely on the representations made. Counsel for plaintiff in error is thereby seeking to establish fraud, and fraud is never presumed. Express proof that the representations were relied on is not indispensable. There are cases in which it may be inferred from the surrounding circumstances, but we are not justified in drawing such an inference from the circumstances in this case, especially where Goodholm expressly stated that he had no confidence in the doctor who made the representations. We are therefore compelled to hold that the finding of the jury in this respect is unsupported by the evidence.

For the error mentioned, the judgment will be reversed, and the cause remanded for a new trial.