No. 22,013.

VINKA DOLNAK, *Appellant,* v. THE SONS AND DAUGHTERS OF JUSTICE et al., *Appellees.*

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE — *Death — Compromise and Settlement with Beneficiary.* In an action against a fraternal beneficiary society upon a certificate payable upon the death of the holder, the defense interposed was that the beneficiary had accepted a payment of a part of the amount named, in full satisfaction of his claim. The plaintiff in reply alleged that the settlement was induced by fraud. On the trial of this issue the plaintiff's evidence showed that the society had refused payment of the full amount, under a claim on its part that it could show that he was not a relative of the person to whom the certificate had been issued, although described therein as her nephew, and that he had been instrumental in her death; that he knowingly accepted the less amount in full satisfaction of his demand, and was induced thereto, in part, by the consideration that if he was compelled to bring suit delay and expense would result; *held,* that a demurrer to the evidence was properly sustained, there being nothing to show fraud or mistake.

2. SAME—*Compromise and Settlement—Tender.* Where the sole defense interposed in an action on a money demand is that a settlement in full has been made in consideration of the payment of a part thereof, the plaintiff is not required to tender the amount received in order to be heard upon a reply seeking to avoid the effect of the settlement on the ground that it was procured by fraud.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed June 7, 1919. Affirmed.

*David F. Carson, William K. Ward,* and *Clyde Glandon,* all of Kansas City, for the appellant.

*J. B. Tomlinson,* of Independence, for the appellees.

The opinion of the court was delivered by

MASON, J.: Kata (or Katie) Zebic died while a member of the Sons and Daughters of Justice, a fraternal beneficiary society, her certificate, for $1,650, being made payable to Vinka Dolnak, described as her nephew. The society paid Dolnak $1,000, taking from him a receipt acknowledging that this sum was accepted by him in full satisfaction of his claim. Later Dolnak brought action against the society for $650 as the balance due him. The society pleaded the settlement referred to, to which the plaintiff replied that it had been obtained by "fraud, misrepresentations, and impositions." A demurrer to the plaintiff's evidence was sustained, and he appeals.

The plaintiff has some knowledge of English, but is not proficient in it. His testimony was given in part with, and in part without, the aid of an interpreter. Neither portion, as preserved in the record, reads very smoothly; but there is no real difficulty in arriving at the essential meaning of either. The interpreter gave this version of his statement of the reason why he took the $1,000 in lieu of $1,650:

"He said they scared him; he said he told him that the lawyers would get half and maybe more and he said that he never been in the court before and they just got him scared; that is why he took the money, the thousand dollars. . . . He said that Dr. Lodge [the society's representative] scared him with this, there were quite a few people that were against him, that they were going to prove that he was not any relation at all to this woman; not only that but that he maybe killed her, and that scared him and he said he just took the money."

Speaking for himself the witness said:

"I says I want my money. He [Dr. Lodge] says I can't give that money somebody against me, I don't know who, I can't get that money, but maybe that money go in court house, maybe stay about two years and maybe more, and he don't want trouble with you, you know I stick to you, something like that, he says; the best thing you do to settle the insurance. . . . He says somebody against me, maybe I kill that woman, something like that, when she got killed, you know. Lots of people against he, he says, like that. He don't know who against me, nobody against me, I don't know who was that. . . . He says maybe that war all over, maybe I get that money; that money stay in court, the court and lawyer eat your money he says; I never been in court houses before, you know. The lawyer will eat your money, if you want the lawyer, maybe you get half your money, something like that; you loss anyway, if you don't want to settle for a thousand dollars. I received a thousand dollars. I took the thousand dollars, they scared me. He said that all the money would be gone to the court is why I took this thousand dollars. I believed what they told me. I never been in court before. He says they said they would put it in the court he said until the war is over and then I will have to need he said a lawyer."

1. From this evidence it is clear, that however ignorant the plaintiff may have been, he understood that the society refused to pay the full amount of his claim without a suit, giving as a reason that it might be able to prove that he was responsible for the death of the holder of the certificate, or that he was not related to her; that if he accepted the smaller amount, he took it in satisfaction of his entire claim; and that to induce him to do so it was represented to him that if he brought an action it would involve delay and the expense of employing an attorney.

If the society could have shown that the plaintiff was not a relative of Kata Zebic, or that he had caused her death, it would have been relieved of all liability to him. The fact that it might in that case have been liable for the full amount to some one else, does not affect the matter. The defense which it proposed to make was legally sufficient, and one it had a right to interpose. The argument that a compromise would avoid delay and expense was legitimate. We do not regard the evidence as making a *prima facie* case for the avoidance of the settlement. There is nothing to indicate that in disputing the plaintiff's claim the defendant acted in bad faith. No fraud or mistake is shown. No statement made by the society's representative was untrue. A mere showing that the plaintiff was the nephew of the holder of the certificate, and that he was not

instrumental in her death—in other words, that he had a valid claim for the full amount—is not a ground for setting aside the compromise. (*Odrowski v. Swift & Co.*, 99 Kan. 163, 162 Pac. 268; 12 C. J. 324; 5 R. C. L. 893.)

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates as an accord and satisfaction, in the absence of fraud, artifice, mistake, or imposition, as the rule that the receiving of a part of the debt due, under an agreement that the same shall be in full satisfaction, is no bar to an action to recover the balance, does not apply, where plaintiff's claim is disputed or unliquidated. Under these circumstances there is a sufficient consideration for the settlement. The fact that the creditor was not legally bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to receive and would have recovered had he brought action, or that he was induced to accept a part of his claim, by fear that he would lose the whole of it, does not in any way affect the operation of the rule, and it is of no importance which of the parties was right in his contention." (1 C. J. 551.)

2. The defendant urges, as a further ground for affirming the ruling sustaining the demurrer to the evidence, that the plaintiff was required to tender a return of the money he had received in the settlement before he could be heard in an action brought to set it aside as fraudulent. It concedes that to hold this would involve the overruling of *Carver v. Fraternal Citizens,* 103 Kan. 824, 176 Pac. 634, and asks a reëxamination of that case. There, as here, the defendant resisted the payment of the whole amount of the plaintiff's claim solely in reliance upon the compromise. This situation therefore was presented: If the plaintiff prevailed there could be no occasion for the return of the money, because, the settlement having been set aside, no defense to the payment of the full amount remained; and if the defendant prevailed there could be no occasion for its return, because, the settlement having been upheld, it was properly made thereunder. If the defendant had pleaded and relied upon a defense which, if sustained, would have entitled it to a recovery of the money that had been paid, a different question would have been presented. It could then have been argued with some plausibility that if the compromise should be set aside and it should be adjudged that the defendant owed nothing, the plaintiff would be allowed to retain the benefit of the settlement and at the same time cause it to be annulled.

The judgment is affirmed.