Michael RICKMAN, Plaintiff,

v.

CONE MILLS CORPORATION; Cone Mills Marketing Company; Ben Sampson; Donald W. Tesher; and Richard Vetack, Defendants.

Civ. A. No. 85-2432.

United States District Court,
D. Kansas.

March 19, 1987.

John B. Gage, II, Overland Park, Kan., for plaintiff.

Frank Saunders, Jr., Dana M. Harris, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendants' motion for summary judgment or, in the alternative, for partial summary judgment on all counts of plaintiff's third amended complaint except Counts III, XXVIII and XXXI. Plaintiff's third amended complaint alleges the following claims: misrepresentation, conspiracy to defraud, breach of contract, defamation, outrage, intentional ·infliction of emotional distress, false light invasion of privacy, wrongful discharge and violation of 29 U.S.C. § 1140 for interference with an employee benefit plan. Plaintiff also seeks a declaration that an agreement entered into by the parties is null and void on the ground that it was induced by fraud.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together· with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must look at the record in the light most favorable to the nonmoving party, liberally construing pleadings and documentary evidence in favor of the party opposing the motion. *Thomas v. United States Dept. of Energy,* 719 F.2d 342, 344 (10th Cir.1983). The party resisting a motion for summary judgment, however, must set forth specific facts showing that there is a genuine issue for trial. *Dart Industries, Inc. v. Plunkett Company of Oklahoma, Inc.,* 704 F.2d 496, 498 (10th Cir.1983). The standard for granting summary judgment "mirrors the standard for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In essence, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

The following facts are deemed uncontroverted for purposes of this motion:

1. Plaintiff was employed as a salesperson by Cone Mills Marketing Company from June 1, 1970, until April 1984, at which time he was promoted to Regional Sales Manager. On July 12, 1984, plaintiff was involuntarily terminated.

2. On or about June 20, 1984, plaintiff was admitted to the Alcohol Recovery Unit at Shawnee Mission Medical Center for treatment of alcoholism.

3. On July 2, 1984, defendants Donald Tesher, Vice-President of Cone Mills Corporation and Cone Mills Marketing Company, and Richard Vetack, Vice-President of Cone Mills Marketing Company, met with plaintiff at Shawnee Mission Medical Center. At this meeting, Tesher and Vetack informed plaintiff that the Lee Company had requested that plaintiff be taken off its

account and that he no longer call upon the company.

4. On July 12, 1984, Tesher and Vetack delivered to plaintiff at Shawnee Mission Medical Center a termination letter-release. The letter read as follows:

July 11, 1984

Mr. Mike Rickman
8052 Colony Lane
Lenexa, Kansas 66215

Dear Mike:

This will confirm our meeting on July 2, 1984, in which you were advised that the Lee Company, one of our two largest customers, has required you to be taken off their account and not call on them. They took this action because they felt you were not servicing them properly, and did not work with their merchandisers; your present problem simply precipitated it. Consequently, until further notice, you are under an indefinite medical leave of absence with full pay.

This action will enable the company to aid you in stabilizing your financial situation. Because you were under threat of imminent foreclosure, we have already paid your mortgage arrears of $2,074.42, and we agreed to proceed, with your consent, to prepare the necessary papers to withdraw funds from your Supplemental Retirement Plan (SRP) account for your uninsured medical bills and other financial hardships, including the mortgage and arrears. This should total around $12,000. Your IRA and other miscellaneous bills (estimated at $3,000) cannot come out of the SRP fund, but, if approved, from a cash advance against salary, with repayment made on a payroll deduction basis until the advance is paid back.

You were advised that, within a short period of time, a decision would be made concerning your future employment, and that there was a real possibility that you will not be continued in employment because of your failure to service properly, over an extended period of time, one of our largest and most critical customers. It is our current intention to remove you from medical leave once you are dis-

charged and we receive medical clearance from our medical director. At that point, we will place you on six months terminal leave, during which time you will receive terminal leave pay (from which your cash advance will be deducted). You will continue to be covered under the group insurance and the pension-related plans, but not the long term disability plan.

In consideration of the extended terminal leave, and those other valuable considerations set forth above, to which you were not otherwise entitled, it is requested that you knowingly and voluntarily agree to release and covenant not to sue Cone Mills Corporation, its officers, directors, employees, divisions, and successors from any claims arising out of your employment or termination.

If you so agree, please sign at the place provided. It is understood that you are under no obligation to do so, and doing so is not a prerequisite to the receipt of the benefits to which you are already entitled. Signature below will also constitute your agreement to pay deductions for any cash advanced.

Very truly yours,
Donald W. Tesher
Vice President
Cone Mills Marketing Co.
Cone Mills Corporation

Accepted and agreed to this
___ day of _____, 1984.

_____

Mike Rickman

_____

(Witness)

5. Plaintiff signed the termination letter on July 12, 1984, the day following his release from the hospital, and had it notarized by a notary public. Plaintiff admits that he was familiar with the contents of the letter when he signed it.

6. In return for signing the termination letter, defendants paid plaintiff six months paid terminal leave in the sum of $28,855.11 (based on his annual salary of $52,500.00) and continued plaintiff's insurance coverage and pension plan coverage during

the terminal leave period (from August 1984 through January 1985).

7. During plaintiff's hospitalization at Shawnee Mission Medical Center, Cone Mills Corporation and/or Cone Mills Marketing Company advanced payment of $2,074.42 to Capitol Federal Savings and Loan Association to satisfy plaintiff's mortgage payments and prevent his home from being foreclosed upon.

8. In early September 1984 plaintiff learned of the alleged falsity of the defendants' statements that the Lee Company had requested that plaintiff be taken off its account. Plaintiff claims that he relied upon the veracity of these statements in signing the termination letter.

9. Despite learning of the alleged falsity of the above-referenced statements, plaintiff continued to accept the terminal leave and other benefits provided by defendants in accordance with the termination letter. Plaintiff made no attempt between the time he discovered the defendants' alleged fraud in September 1984 and the present time to return the benefits received under the agreement. He made no attempt to rescind the agreement until this suit was filed.

10. After leaving the hospital on July 11, 1984, plaintiff continued to receive care at the hospital's Addiction Recovery Unit. Plaintiff attended "After-Care" sessions on a weekly basis beginning the last week of July and continuing through November 1984.

11. Plaintiff filed this action on August 21, 1985. All of the defendants are either employees, officers or divisions of Cone Mills Corporation.

Disputed issues of fact remain as to the following:

1. Whether the Lee Company requested that plaintiff be taken off its account.

2. Whether plaintiff signed the termination letter only because he believed the statements that the Lee Company wanted him off its account to be true.

Defendants argue that they are entitled to summary judgment on all of plaintiff's claims because plaintiff executed a valid covenant not to sue and release of all claims against the defendants involving his employment and termination. Additionally, defendants argue that plaintiff waived the right to rescind this agreement by continuing to accept valuable and substantial consideration under the agreement long after he discovered that the release contained allegedly false information.

Plaintiff refutes defendants' arguments on two grounds. First, plaintiff argues that, regardless of whether plaintiff continued to accept the benefits of the agreement, the release and covenant not to sue are void under K.S.A. 60–2801 and 60–2802. Alternatively, plaintiff contends that, under Kansas common law, an individual may retain the benefits obtained through a settlement induced by fraud and thereafter sue the settling party to avoid the settlement.

■ We will first address plaintiff's argument that the release is void under Kansas statutory law. K.S.A. 60–2801 provides:

(a) Within fifteen (15) days of the date of the occurrence causing injury to any person, who either is under the care of a person licensed to practice the healing arts, or is confined to a hospital or sanitarium as a patient, no person whose interest is or may become adverse to the injured person shall:

(1) Negotiate or attempt to negotiate a settlement with the injured patient; or

(2) obtain or attempt to obtain a general release of liability from the injured patient.

(b) Any settlement agreement entered into, any general release of liability or any written statement made by any person who is under the care of a person licensed to practice the healing arts or is confined in a hospital or sanitarium after he or she incurs a personal injury, which is not obtained in accordance with the provisions of K.S.A. 60–2802, may be disavowed by the injured person within fifteen (15) days after discharge from the care of any person licensed to practice the healing arts or after release from the

hospital or sanitarium, whichever occurs first, and such statement, release or settlement shall not be received in evidence in any court action relating to the injury.

In turn, K.S.A. 60–2802 provides:

The same provisions of this act relating to settlements, releases and statements obtained from a patient confined in a hospital or sanitarium or being treated by a person licensed to practice the healing arts, shall not apply, if such patient is released from a hospital or sanitarium or released by a person licensed to practice the healing arts, within fifteen (15) days of the date of the occurrence causing injury, or if at least five (5) days prior to obtaining the settlement, release or statement, the injured party has signified in writing his or her willingness that a settlement, release or statement be given.

Our review of the case law reveals only one case in which these statutes have been interpreted. In *Traylor v. Wachter*, 3 Kan.App.2d 536, 598 P.2d 1061 (1979), the Kansas Court of Appeals held that a settlement or release obtained from an injured person, hospitalized or under a doctor's care, within fifteen days of the injury causing occurrence is void. *Id.* at 546, 598 P.2d at 1071. Plaintiff would have us apply the *Traylor* rule to the facts of this case. He argues that, because plaintiff was still under a doctor's care through the "After-Care program" when he signed the release and covenant not to sue on July 12, 1984, the release was void *ab initio*.

We are not persuaded by plaintiff's arguments. We find the statutes totally inapplicable to the facts of this case. First, we find that the defendants are not persons "whose interest[s] [are] or may become adverse to the injured person" within the meaning of K.S.A. 60–2801(a). Although the language of subsection (a) is broad, it is clear that the Kansas Legislature intended that the person attempting to settle have some relationship to the injuries that have placed the individual in the hospital or under the care of a physician. K.S.A. 60–2801 and 60–2802 were enacted in response to complaints that many injured persons

were being "hot boxed" into negotiating inappropriate settlements for injuries within only a few days after the injury occurred and during that time period when perhaps the individual could not think objectively on the subject. 41 J.B.A.K. 7, 60 (1972). In an attempt to provide a "cooling off period," House Bill 2105 was passed. *Id. See also Traylor*, 3 Kan.App.2d at 544, 598 P.2d at 1070. Defendants in the instant case have absolutely no causal relationship to plaintiff's alcoholism which necessitated plaintiff's medical care.

Additionally, we find that the statutes are inapplicable because plaintiff has suffered no "injuries" as required by these laws. Plaintiff entered the hospital and its "After-Care program" for treatment of alcoholism, not an injury. Even if by some feat of the imagination we were able to classify plaintiff's alcoholism as an "injury," there would be no way to calculate the "date of the occurrence causing injury" to the plaintiff. Under plaintiff's interpretation of the statutes, a person under a doctor's care for any reason would be precluded from entering into a settlement or release with anyone for any claim. Such a result was clearly not intended by the legislature.

In light of the above, we hold that K.S.A. 60–2801 and 60–2802 do not apply to void the release and covenant not to sue at issue here. We will next consider whether the agreement was in fact a valid release and covenant not to sue and whether plaintiff waived the right to avoid the agreement by accepting and retaining its benefits.

The parties do not dispute that the termination letter constitutes both a release and covenant not to sue. It is elemental that the law favors such agreements executed in compromise and settlement of disputes. *See Kennedy v. City of Sawyer*, 228 Kan. 439, 461, 618 P.2d 788, 803 (1980); *Fieser v. Stinnett*, 212 Kan. 26, 31, 509 P.2d 1156, 1160 (1973). Thus, in the absence of fraud, bad faith or mutual mistake of fact, when two parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate the agreement.

*Id.; Rymph v. Derby Oil Co.*, 211 Kan. 414, 418, 507 P.2d 308, 312 (1973).

Plaintiff attempts to avoid the release and covenant not to sue here by claiming that they were obtained by fraud. Specifically, plaintiff claims that he agreed to the covenant not to sue and release in reliance on the defendants' statements that the Lee Company had requested that he be taken off its sales account. Plaintiff contends that the Lee Company in fact never made such a request. Clearly, disputed issues of fact remain as to these issues and preclude us from determining at this point whether the defendants did in fact make the alleged misrepresentations and whether the plaintiff relied upon them in executing the release and covenant not to sue. However, for purposes of this motion we must look at the record in the light most favorable to plaintiff and must assume that the agreement was in fact induced by fraud.

Defendants argue that plaintiff waived his right to rescind the agreement on the ground of fraud and to bring this suit by (1) retaining the benefits that he had already received under the agreement after he discovered the alleged fraud; (2) continuing to accept the benefits for several months thereafter; and (3) waiting almost eleven months from the time he discovered the alleged fraud to bring this suit to avoid the agreement. Defendants rely on the general rule of contracts that one who seeks to rescind a contract for fraud must do so promptly upon discovery of the fraud. *See Moore v. Farm & Ranch Life Ins. Co.*, 211 Kan. 10, 17, 505 P.2d 666, 672 (1973); *J.C. Nichols Co. v. Meredith*, 192 Kan. 648, 653, 391 P.2d 136, 140 (1964).

It is well established that:

> [i]f, after discovery or knowledge of facts which would entitle a party to a contract to rescind the contract, he treats the contract as binding and leads the other party to believe that the contract is still in effect, he will have waived his right to rescind.

> In order to constitute such a waiver, it is not necessary that there be an express ratification of the contract after discovery of the fraud which might make

the equitable remedy of rescission available. Acts or conduct inconsistent with an intention to rescind it, or in recognition of the contract, may have the effect of affirming it.

*Moore*, 211 Kan. at 17, 505 P.2d at 672 (quoting *Morse v. Kogle*, 162 Kan. 558, 178 P.2d 275 (1947)). *See also Curry v. Stewart*, 189 Kan. 153, 158–59, 368 P.2d 297, 301 (1962).

Plaintiff argues that this general rule applies only to contracts and not to releases or covenants not to sue. Plaintiff would have us rely instead on the rules enunciated in three older Kansas cases dealing specifically with the rescission of releases induced by fraud.

The first case relied upon by plaintiff is *Missouri Pacific Railway Co. v. Goodholm*, 61 Kan. 758, 60 P. 1066 (1900). In that case the plaintiff was injured in a railroad accident and a railroad physician misrepresented to plaintiff that his injuries were slight. Plaintiff was induced by the physician's misrepresentations to execute a release in favor of the railroad in return for a small amount of money. Plaintiff later sued the railroad for negligence. When the defendant argued that the plaintiff had executed a full release, plaintiff replied that the release was induced by fraud. The court held that plaintiff was not precluded from attacking the release by failing to tender the "trifling amount paid" by defendant under the release. The court stated:

> The general rule is that one who seeks to set aside a contract or conveyance should return or offer to return the consideration received for the same. This rule is peculiarly applicable where the property or consideration is the thing in controversy; or, rather, where the cause of action arises out of the fraudulent transaction that is attacked. Here, a right of action existed prior to and independent of the execution of the release alleged to be fraudulent and void. There was an implied admission of liability of the company to the extent of fifteen dollars, and as the amount paid is conceded to be due, whatever the result of the litigation,

what good reason is there for returning it? Restoration or tender is required on equitable considerations, but what injustice or inequity could result to the company if the amount impliedly admitted to be due is held and credited upon any recovery against it? If the release is held to be binding, [plaintiff] is entitled to the money paid; and if he establishes a liability for the injuries apparently sustained by him, it can be credited upon the recovery.

*Id.* at 761–62, 60 P. at 1067.

Plaintiff also relies on *Dolnak v. Sons & Daughters of Justice*, 105 Kan. 59, 181 P. 545 (1919), wherein the court held that the plaintiff was not required to tender a return of money received on a settlement before he could sue to set aside the settlement as fraudulent. The plaintiff in *Dolnak* was a beneficiary of a death certificate issued by the defendant. Plaintiff executed a settlement with defendant for less than the full amount of benefits after the defendant threatened not to pay on the certificate immediately. The court held:

If the plaintiff prevailed there could be no occasion for the return of the money, because, the settlement having been set aside, no defense to the payment of the full amount remained; and if the defendant prevailed there could be no occasion for its return, because, the settlement having been upheld, it was properly made thereunder. If the defendant had pleaded and relied upon a defense which, if sustained, would have entitled it to a recovery of the money that had been paid, a different question would have been presented.

*Id.* at 62, 181 P. at 547.

Finally, plaintiff relies on *Koshka v. Missouri Pacific Railroad Co.*, 114 Kan. 126, 217 P. 293 (1923), in which the court applied the same rule to a plaintiff injured at work who had settled with his employer. The court noted:

[I]t has long been the rule in this jurisdiction that where a settlement and release of a claim for personal injuries has been made for a grossly inadequate sum, whether induced by fraud, mutual mistake, lack of capacity or understanding, coercion or the like, a return of the consideration is not a prerequisite to an avoidance of the release as in ordinary cases of rescission, but can be taken care of as an item of credit if and when plaintiff's real damages are judicially determined and allowed.

*Id.* at 130, 217 P. at 295.

Plaintiff argues that these cases stand for the proposition that an individual does not waive his right to rescind a settlement agreement induced by fraud by retaining the benefits of the settlement after discovering the fraud. We must disagree with this interpretation. We believe the rule to be garnered from these cases is that when there is an admission of liability on the underlying claims and the release has been made for a grossly inadequate sum, then the plaintiff's failure to return the consideration upon discovering the fraud does not bar plaintiff from rescinding the release and suing to recover on the underlying liability. In such cases there is little risk that the plaintiff will unduly profit by retaining the benefits of the settlement since liability has already been admitted. If the jury finds no fraud, the release is binding and plaintiff is entitled to keep the money already paid. If, on the other hand, the jury finds fraud, the release is not binding and the jury will presumably award more money than already accepted by plaintiff under the settlement.

Only in those situations where there is no admission of liability and no claim that plaintiff has received a grossly inadequate sum should the rule not apply. In those cases there is a serious risk that the plaintiff has unduly profited at the defendant's expense. It is not difficult to conceive of a situation where a defendant denies liability, settles with the plaintiff for the nuisance value and pays plaintiff valuable consideration on a continuing basis. Even after discovering that the defendant committed fraud, the plaintiff continues to receive the payments under the settlement. The plaintiff then decides to rescind the agreement and sue on the underlying claims. If the jury finds the defendant committed fraud

in inducing the settlement but that he is not liable on the underlying claims, plaintiff will be forced to return the consideration received under the settlement. However, for that period of time between plaintiff discovering the fraud and the jury returning a verdict, the plaintiff would have enjoyed the benefit of consideration to which he was not entitled. We see no reason why it matters whether we are dealing with a contract or a release; a party should not be allowed to accept the benefits of a settlement agreement, with full knowledge of all the facts, and yet deny his responsibility thereunder.

In the instant case, there has been no claim by plaintiff that the amount received by him under the settlement was an inadequate sum. Furthermore, there has been no admission (either express or implied) of liability by the defendants. The termination letter merely states that plaintiff voluntarily agrees to release and covenants not to sue Cone Mills and its employees and divisions for any claims arising out of plaintiff's termination or employment in return for valuable consideration to which plaintiff was not otherwise entitled. Perhaps in 1900 when *Goodholm* was decided, such a settlement might have been considered an implied admission of liability. We do not believe that it should be so perceived today. In light of these factors, we believe that the rule enunciated in *Goodholm* is inapplicable to the case at bar.

We are convinced that if the Kansas Supreme Court were presented with this issue today, it would hold that the general rules governing the rescission of contracts apply in this case.[1] Under the rules stated in *Moore v. Farm & Ranch Life Ins. Co.*, 211 Kan. 10, 505 P.2d 666 (1973), plaintiff's retention and continued receipt of benefits under the terms of the termination letter after he had discovered the alleged fraud

of the defendants constituted ratification of the release and covenant not to sue. Plaintiff's delay in bringing this suit after he learned of the defendants' alleged misrepresentations is further evidence of plaintiff's affirmation of the agreement. By such conduct plaintiff waived his rights to rescind the agreement and to sue the defendants on their underlying alleged liability. In light of the foregoing, we hold that plaintiff is conclusively bound by the agreement as if the defendants' alleged fraud never occurred.

The only issues remaining for us to determine are the scope of the agreement and the extent to which it bars plaintiff's present action. To determine the scope of a settlement agreement the court must consider the intent of the parties, the express language of the agreement and all of the facts and circumstances surrounding its making. *In Re Estate of Engels*, 10 Kan. App.2d 103, 106, 692 P.2d 400, 404 (1984). A person cannot release a claim of which he has no knowledge. 66 Am.Jur.2d *Release* § 30 at 707. Thus, a release ordinarily covers only those claims due at the time of its execution that were within the contemplation of the parties. *Engels*, 10 Kan. App.2d at 106, 692 P.2d at 404. *See also* Am.Jur., *supra*, at 706. As a general rule, claims arising contemporaneously with the execution of the release are not released unless expressly stated in the agreement. *Id.*

In the instant case, plaintiff covenanted not to sue and agreed to release "Cone Mills Corporation, its officers, directors, employees, divisions and successors from any claims arising out of [plaintiff's] employment and termination." There is no doubt here that all counts of plaintiff's third amended complaint arise out of plaintiff's employment and termination. Sim-

---

**1.** Our decision is in accord with the majority of other jurisdictions, which in general treat releases and covenants not to sue as contracts. 66 Am.Jur.2d *Release* §§ 1, 2 at 678, 679. A release induced by fraud is considered a voidable contract. *Id.* § 21 at 695–96. Thus, when the releasor retains the consideration with knowledge of the fraud, he is said to have ratified the release and is estopped from avoiding the release be-

cause of fraud. *Id.* § 27 at 703–04. *See also* 15A C.J.S. *Compromise & Settlement* §§ 40–41 at 264–66. The only exception to this rule is when the party seeking rescission would be entitled in any event to retain the consideration received upon settlement even though the compromise be set aside. *Id.* § 41 at 267–68. We believe the Kansas cases relied upon by plaintiff fall within this exception.

ilarly, there is no question that all of the defendants fall within the scope of the agreement. The only issue we must resolve is whether the thirty-two counts contained in plaintiff's third amended complaint may be considered "pre-existing" and within the parties' contemplation such that they fall within the scope of the release and covenant not to sue.

■ We will first consider whether Counts III, XXX and XXXI fall within the scope of the parties' agreement. Count III alleges breach of an oral contract of employment; Count XXX alleges wrongful discharge; and Count XXI alleges a violation of 29 U.S.C. § 1140 (claiming that defendants discharged plaintiff in an attempt to preclude him from recovering long-term disability benefits under Cone Mills' plan of self-insurance). We find that all of these claims existed at the time the parties executed the agreement in July 1984 and that the parties reasonably contemplated that such claims were released. We therefore hold that plaintiff is barred from suing on these claims. Accordingly, defendants are entitled to summary judgment on Counts III, XXX and XXXI.

■ The remaining counts present a more difficult question. Count I alleges that the defendants, through the statements made in the termination letter, misrepresented that the Lee Company demanded that plaintiff be taken off its account because they felt plaintiff was not properly servicing the account. Plaintiff alleges that he signed the termination agreement in reliance on this representation. He seeks a declaration that the release is null and void and also requests money damages for the misrepresentation.

Normally, such a claim would not be considered within the scope of the release, as it arose contemporaneously with the execution of the release and could not have been contemplated by the parties when the release was given. *See* 66 Am.Jur.2d *Release* § 29 at 706. Where, however, as here, the plaintiff has ratified the release after learning of the misrepresentation, a different rule must apply. In such a situation we must look to the existence of the claim and the intent of the parties at the time of *ratification* rather than at the time of *execution*. Because plaintiff knew that the statement was false at the time he initially ratified the release (i.e., when he accepted and retained the benefits under the agreement in September 1984 through January 1985), it fairly can be said that he intended to release the defendants for any claim of misrepresentation. Consequently, we hold that Count I of plaintiff's third amended complaint is barred by the release and covenant not to sue. Defendants are entitled to summary judgment on that count.

■ Count II alleges a claim for conspiracy to defraud "plaintiff of his rights and remedies arising out of (a) plaintiff's employment agreement, (b) defendants' wrongful discharge of plaintiff, and (c) the manner in which defendants discharged plaintiff." Plaintiff's Third Amended Complaint at 5. For the same reasons discussed above, we hold that this claim is barred and defendants are entitled to summary judgment on Count II.

■ Count XXV, a claim for outrage, alleges that "[d]efendants' conduct in arriving at the hospital and in misrepresenting to plaintiff and others that the Lee Company had requested he be removed from their account, and telling plaintiff he had 'no future' with Cone Mills or with the industry, and in accusing plaintiff of entering the hospital to hide from defendants constituted extreme and outrageous conduct based upon defendants' knowledge that plaintiff was still in the process of alcoholism rehabilitation...." Plaintiff's Third Amended Complaint at 38. Count XXVI alleges a similar cause of action for intentional infliction of emotional distress. Like plaintiff's claims for misrepresentation and conspiracy to defraud, the claims alleged in Counts XXV and XXVI existed (and plaintiff knew they existed) at the time plaintiff initially accepted the benefits under the agreement. As we discussed above, the fact that plaintiff ratified the agreement with this knowledge is sufficient to impose on plaintiff the intention to release defendants from these claims. We therefore hold

that Counts XXV and XXVI are barred and defendants are entitled to summary judgment thereon.

█ Finally we will consider whether the remaining counts are barred by the release and covenant not to sue. Counts IV–XXIV and XXXII allege claims for defamation. Most of these claims allege that the defendants made defamatory statements to members of the garment industry to the effect that the Lee Company had requested that plaintiff be removed from its account. These counts also include claims that (1) individuals other than the defendants republished the defendants' defamatory statements and (2) defendants and one of their agents made false statements to the effect that plaintiff admitted himself to the hospital to avoid termination by defendants. Related to these claims are Counts XXVII, XXVIII and XXIX. Count XXVII alleges a claim for false light invasion of privacy based on the defendants' defamatory statements; Count XXVIII alleges a claim for damages to plaintiff's prospects for employment based on the defendants' alleged defamation; and Count XXIX alleges a cause of action for lost wages based on the defendants' intentional conduct.

The parties disagree as to when these remaining causes of action arose. Defendants argue that these claims accrued when the alleged false statements were made. Plaintiff argues that these actions accrued when the plaintiff discovered the falsity of the statements. Regardless of when these claims actually arose, we hold that they are all barred by the covenant not to sue and release. Those claims that arose before February 1985 are barred by plaintiff's ratification of the agreement, *i.e.*, by plaintiff's acceptance of the salary, insurance and pension benefits in August 1984 through January 1985. Those claims that arose after January 1985 are also barred by plaintiff's continued retention of the benefits and his failure to at any time tender the benefits back to defendants.

In sum, we hold that plaintiff, by accepting and retaining the benefits under the termination letter, covenanted not to sue defendants and released defendants from all of the claims alleged in this action. Defendants are therefore entitled to summary judgment on all counts.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is granted. The clerk is directed to assess costs against plaintiff and in favor of defendants.