Steven REIGHARD, Plaintiff,

v.

LIMBACH CO., INC., et al., Defendants.

No. Civ.A. 01–824–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 23, 2001.

Matthew Marc Moore, Shulman Rogers Gandal Pordy & Ecker, Rockville, MD, for plaintiff.

Richard Mark Dare, Reed Smith Hazel & Thomas L.L.P., Falls Church, VA, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff in this action asserts various claims against his former employer pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* including a claim for discriminatory discharge, in violation of Section 510, 29 U.S.C. § 1140. The employer counterclaims for breach of a covenant not to sue contained in plaintiff's employment contract. Among the issues presented at the threshold dismissal stage is whether ERISA preemption bars enforcement of the covenant not to sue.

### I.

Prior to January 2000, plaintiff, Steven Reighard, served as the Chief Financial Officer ("CFO") of PBM Mechanical, Inc. ("PBM"), a Virginia corporation. Then in January, defendant Limbach Co., Inc. ("Limbach"), a Pennsylvania corporation, acquired PBM. During this time, defendant Charles Boyd served as president of Limbach and defendant Patrick McAteer served as president of PBM. In connection with the acquisition, plaintiff entered into an employment agreement ("Agreement") with PBM pursuant to which he would be a PBM employee-at-will and continue to serve as PBM's CFO. As an employee-at-will, plaintiff could be discharged with or without cause. In either event, his salary under the Agreement would cease. But

the Agreement also provided that plaintiff's benefits under the employer's "split-dollar" insurance benefit plan[1] ("Plan") would be extinguished only in the event plaintiff were terminated "for cause," as defined in the Agreement.[2] Also included in the Agreement was a covenant from plaintiff not to sue PBM for any involuntary termination.

PBM terminated plaintiff on October 13, 2000. Defendants, citing plaintiff's performance problems, assert that plaintiff's termination was "for cause" under the Agreement. Plaintiff, however, denies he was terminated "for cause" and contends instead he was terminated by defendants because he refused to forfeit a portion of the funds he was due under the Plan after PBM proved to be less profitable than Limbach had hoped.

Plaintiff's complaint, filed on May 29, 2001, asserts four claims under ERISA:

(1) Count I asserts a claim against Boyd, Limbach, McAteer, and PBM for discriminatory discharge in violation of Section 510 of ERISA.

(2) Count II asserts a claim against Boyd, Limbach, McAteer, and PBM for denial of ERISA benefits in violation of Section 502(a)(1)(B).

(3) Count III asserts a claim against Boyd and Limbach for breach of fiduciary duties in violation of Sections 404 and 409.

(4) Count IV asserts a claim against Limbach for failing to provide a summary plan description in violation of Section 502(c)(1).

Defendants filed answers denying plaintiff's ERISA claims. In addition, PBM, relying on the covenant not to sue, filed a counterclaim against plaintiff for attorneys' fees it has incurred and will incur in defending this action. PBM contends that plaintiff, by filing this ERISA action, has breached the covenant not to sue for any involuntary termination.

Plaintiff moved for dismissal of this counterclaim, pursuant to Rule 12(b)(6), Fed.R.Civ.P., claiming that the covenant is void and unenforceable in the face of plaintiff's ERISA claims.[3]

## II.

Plaintiff, in his employment agreement with PBM, covenanted not to sue PBM "for any sums for Involuntary Termination other than those … specified." Agreement, para. 3.3. Whatever the meaning or effect of this covenant in other contexts, PBM's counterclaim makes clear its meaning and effect in this case: It is an attempt to have plaintiff waive any and all ERISA claims that might arise in the future stemming from an involuntary termination. Thus, plaintiff's challenge to the validity of the covenant not to sue squarely presents the question whether a waiver of future ERISA rights is valid.

■ The threshold issue in the analysis of this question is the choice of governing

---

1. The Plan provided Reighard with a universal life insurance policy, the premiums for which Reighard paid. The parties agree that the Plan is a certified plan under ERISA.

2. Under the Agreement, Reighard could be fired "for cause" only under the following scenarios: a) willful misconduct; b) conviction of a felony; c) willful refusal to perform assigned duties; d) conflict of interest; e) conduct injurious to PBM; f) material breach

of the employment agreement, corporate code, or corporate policy; or g) violation of the Foreign Corrupt Practices Act. *See* Agreement, para. 3.1(i).

3. Defendants' threshold motion for dismissal of plaintiff's ERISA claims was denied. *See Reighard v. Limbach Co., Inc.*, Civil Action No. 01–824–A (E.D.Va. Aug. 10, 2001) (order).

law. Clearly, federal law must govern resolution of this question. This follows from the expansive, indeed "unparalleled breadth," of ERISA's preemption provisions. *Holland v. Burlington Indus., Inc.,* 772 F.2d 1140, 1147 (4th Cir.1985).[4] By its terms, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has held that, generally, "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Because PBM's counterclaim asserts that plaintiff's covenant is a waiver of all future ERISA claims under the Plan, it quite clearly "relates to" or has a "connection with" an ERISA employment benefit plan. Moreover, the covenant, if literally applied, would grant defendant its attorneys' fees whether or not plaintiff prevails on his

ERISA claims under the Plan. Thus, the covenant not only "relates to" an ERISA plan, it also operates to contradict the statute's attorneys' fees scheme.[5] Accordingly, federal law governs here by preemption.[6]

■ Federal authority is sparse on the question of whether ERISA rights or claims may be waived prospectively. Although there is no Fourth Circuit authority directly on point, the Tenth Circuit, in *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1293 (10th Cir.1991), has squarely held that a covenant not to sue and a release signed by an employee is not effective as to unknown, future ERISA claims. *See also McLendon v. Continental Group, Inc.,* 602 F.Supp. 1492, 1505 (D.N.J.1985) (acknowledging that rights under Section 510 of ERISA may not be waived prospectively). This result is based on the sensible proposition—well-

---

**4.** For other Fourth Circuit decisions elaborating on the expansive breadth of ERISA preemption, see *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1468 (4th Cir.1996) (holding that "Congress intended to preempt state laws that ... preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself"); *O'Shea v. Commercial Credit Corp.,* 930 F.2d 358, 362 n. 3 (4th Cir.1991) (holding that "[t]o the extent ... that contract principles are implicated, they are entirely preempted by ERISA"), *cert. denied,* 502 U.S. 859, 112 S.Ct. 177, 116 L.Ed.2d 139 (1991).

**5.** The Fourth Circuit, construing 29 U.S.C. § 1132(g)(1), has held that "only a prevailing party is entitled to consideration for attorneys' fees in an ERISA claim." *Martin v. Blue Cross & Blue Shield of Virginia, Inc.,* 115 F.3d 1201, 1210 (4th Cir.1997). While only prevailing parties can recover attorneys' fees, they are not guaranteed such fees. Rather, courts are to consider five factors in determining whether the prevailing party should recover attorneys' fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an

award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries in an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *See id.* at 1209.

**6.** *See Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1293 (10th Cir.1991) (holding that ERISA preempts state law when adjudicating a claim regarding a covenant not to sue); *Tobin v. Ravenswood Aluminum Corp.,* 838 F.Supp. 262, 270 (S.D.W.Va.1993) (holding that ERISA preempts state law when adjudicating a claim regarding a release); *McLendon v. Continental Group, Inc.,* 602 F.Supp. 1492, 1505 (D.N.J.1985) (applying ERISA, rather than state law, to adjudicate a claim regarding a waiver of prospective rights). *Cf. Auslander v. Helfand,* 988 F.Supp. 576, 579–580 (D.Md.1997) (holding that ERISA does not preempt state law in a claim involving a limited release).

recognized in cases considering the validity of waivers of future statutory rights—that such waivers, if allowed, would have the pernicious effect of tending to encourage violations by assuring the wrongdoers that they may act with impunity.[7] To be sure, an employee may voluntarily waive *known* ERISA benefits.[8] Waivers of *known* ERISA rights—typically obtained in connection with settlements—do not generally serve to invite or encourage future violations. By contrast, where, as here, a covenant not to sue purports to waive prospectively any future rights or claims under ERISA, the result, in effect, is to grant the employer a license to violate ERISA in the future with impunity. ERISA rights are too important to permit this result.

Although authority directly on point is sparse, analogous authority in other statutory contexts reaches the same result for the same reasons. *See, e.g., Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 51, 94

S.Ct. 1011, 39 L.Ed.2d 147 (1974) (holding that antidiscrimination statutes are not susceptible to prospective waivers insofar as they "represent a congressional command that each employee be free from discriminatory practices"). Thus, the conclusion that waivers of future claims under ERISA are invalid is consistent with the general rule that waivers of prospective statutory federal rights are void.

Seeking to avoid the result reached here, defendant argues that the covenant not to sue should survive and apply in the event plaintiff's ERISA claims fail. In that event, defendant points out, the covenant not to sue would not affect, or relate to, an ERISA plan and should then operate under state law[9] to allow the counterclaim.

This argument is flawed for two reasons. First, such an outcome would contravene

---

**7.** *See Cange v. Stotler & Co.*, 826 F.2d 581, 595 n. 11 (7th Cir.1987) ("The waiver of substantive federal statutory rights after the violation has occurred is akin to a settlement of the dispute, but prospective waivers of statutory rights tend to encourage violations of the law by notifying the wrongdoer in advance that he or she can act with impunity; therefore prospective waivers uniquely can violate public policy."). *See also Nicholson v. Conrail*, 1987 WL 5406, *2–3 (N.D.Ill.1987) (same); *Rickman v. Cone Mills Corp.*, 659 F.Supp. 412, 419–20 (D.Kan.1987) (same), *rev'd and remanded on other grounds*, 893 F.2d 1340 (10th Cir.1989).

**8.** *See United Mine Workers v. New River Co.*, 842 F.2d 734, 737 (4th Cir.1988); *Smart v. Gillette Co. Long–Term Disability Plan*, 70 F.3d 173, 181 (1st Cir.1995); *Rodriguez–Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 587 (1st Cir.1993) (holding that "ERISA does not prohibit knowing and voluntary relinquishment of employee benefits"); *Finz v. Schlesinger*, 957 F.2d 78, 82 (2nd Cir.1992); *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 455–56 (7th Cir.1991) (holding that anti-alienation provisions do not preclude a waiver of ERISA benefits in a settlement agreement); *Leavitt v. Northwestern Bell Tel. Co.*,

921 F.2d 160, 162 (8th Cir.1990); *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir.1989) (holding that a "full and final settlement of any and all claims" shows the intent that an employee intended to waive all existing claims under ERISA); *Laniok v. Brainerd Mfg. Co. Pension Plan*, 753 F.Supp. 1115, 1118 n. 2 (W.D.N.Y.1990) (holding that waivers of already-existing rights are valid, but distinguishing the waiver in the case before it from those "which attempt to release an employee's rights under Title VII or other anti-discrimination statutes"), *rev'd on other grounds*, 935 F.2d 1360 (2d Cir.1991).

**9.** Yet, it is worth noting that even were state law to apply, it is likely the same result would obtain because pre-injury exculpatory clauses of contracts and covenants not to sue for prospective, statutory relief are void as against public policy. *See Hiett v. Lake Barcroft Community Ass'n, Inc.*, 244 Va. 191, 418 S.E.2d 894, 895 (1992); *Johnson's Adm'x v. Richmond & Danville R.R. Co.*, 86 Va. 975, 11 S.E. 829 (Va.1890); *Coles v. Jenkins*, 34 F.Supp.2d 381, 389 (W.D.Va.1998) (discussing Virginia law).

the ERISA attorneys' fees framework set out in *Martin*, 115 F.3d at 1209–10, pursuant to which courts may award fees only to a prevailing party if certain conditions are met.[10] Defendant's argument seeks to displace this scheme by invoking the covenant to require that plaintiff pay defendant's attorneys' fees regardless of whether the *Martin* criteria are met. In sum, were defendant allowed to recover under its counterclaim, the Fourth Circuit's scheme for allocating attorneys' fees in ERISA cases would be undermined.

Second, allowing the counterclaim would also compromise the efficacy of ERISA. If the covenant not to sue were given effect in an ERISA case, an ERISA claimant would be compelled to weigh the benefits of pursuing ERISA claims against the burdens of paying opposing counsel's fees. Requiring an ERISA claimant to engage in such a calculation would create a clear disincentive to the assertion of ERISA claims, a result at odds with the statute's purpose and goals.[11] Thus, the covenant not to sue is void in the context of plaintiff's ERISA claims whether or not plaintiff prevails on the claims.

### III.

For the reasons discussed, plaintiff's motion to dismiss defendant PBM's counterclaim must be GRANTED.

An appropriate order has been issued.

---

10. *See supra* note 5.

11. *See, e.g., Varity Corp. v. Howe,* 516 U.S. 489, 496–98, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (holding that an important purpose of ERISA is to protect employee pensions and other benefits).